IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 5, 2000 Session

## HAROLD W. FERRELL, SR. v. CIGNA PROPERTY & CASUALTY INSURANCE CO., ET AL.

**Appeal from the Circuit Court for Warren County**
**No. 9962   Richard McGregor, Clerk and Master**

---

**No. M1999-01669-WC-R3-CV  - Filed December 8, 2000**

---

This workers' compensation case presents two issues for review concerning the merits of the employee's claim for benefits. The first is whether this action is barred by the statute of limitations. The second is whether the preponderance of the evidence establishes that the employee's injury was work-related. The trial court ruled that the statute of limitations had expired, and it also addressed the merits and found that the employee failed to prove that his injury was work-related. We hold that the statute of limitations had not expired, and we further hold that the trial court's dismissal of the employee's claim should be affirmed on the merits because the evidence does not preponderate against the trial court's finding that the employee's injury was not work-related. In addition to the merits of this suit, we also granted review to determine the legality of the trial court's practice of referring workers' compensation cases to a clerk and master for trial. We hold that the proper procedure for appointing a special/substitute judge was not followed; however, reversal is not required because the Clerk and Master was acting as a *de facto* judge.

### Appeal pursuant to Tenn. Code Ann. § 50-6-225(e); Judgment of the Circuit Court Affirmed as Modified

FRANK F. DROWOTA, III, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

William J. Butler and Frank D. Farrar, Lafayette, Tennessee, for the appellant, Harold W. Ferrell, Sr.

Tyree B. Harris, IV and Alan D. Johnson, Nashville, Tennessee, for the appellees, Cigna Property & Casualty Insurance Co. and APAC-Tennessee, Inc.

## OPINION

The employee, Harold W. Ferrell, Sr. ("Ferrell"), began working for APAC-Tennessee, Inc. ("APAC"), a construction company, in 1970. APAC, an appellee, obtains workers' compensation insurance through Cigna Property & Casualty Insurance Co., also an appellee. During his twenty-eight years with APAC, Ferrell worked as a bulldozer operator on construction sites and then as a foreman. While on the job he was exposed to loud noise from machinery and explosives.

Ferrell had hearing problems since he was a child, but he testified that his hearing loss became more serious when he started working for APAC, and that at work he experienced ringing in his ears, headaches, and dizziness. He first sought treatment in 1974 with Dr. Richard Bryan Bell ("Dr. Bell"), an ear, nose, and throat specialist, who became his sole treating physician for the next twenty-four years. As part of his treatment, Dr. Bell performed surgery on Ferrell's ears in 1974, in 1983, and again in 1994. Following the first operation, Ferrell began wearing hearing aids. Dr. Bell determined that he had a 34% combined hearing loss to both ears in 1974. By 1998, according to Dr. Bell, he had sustained a 100% hearing loss in the right ear, an 81% hearing loss in the left ear, and a combined hearing loss of 84% to both ears. The cause of this deterioration is the centerpiece of this case: Ferrell claims his hearing declined because of exposure to loud noise at work; APAC claims that his hearing problem is structural in nature, resulting from a congenital condition.

Ferrell testified at trial that he did not seek to determine whether his hearing loss was work-related until he stopped working for APAC in April 1998. At that point he went to his attorney, who, according to Ferrell, counseled him to file suit on the theory that his hearing loss might be work-related. Ferrell testified that he first thought his hearing loss was in fact work-related on August 25, 1999, the day before trial, when he saw a Standard Form Medical Report for Industrial Injuries ("C-32 Form") which Dr. Bell filled out in March 1999.

Ferrell stated that during his long doctor-patient relationship, although he had talked to Dr. Bell about his work, the two never discussed the possibility that loud noise caused his hearing loss, and Dr. Bell never cautioned him to limit his exposure to loud noise. He also testified that he never asked Dr. Bell if his work environment contributed to his hearing loss. As proof of Ferrell's credibility (which the trial court acknowledged), Ferrell notes that he never filled out workers' compensation forms when he had his three surgeries – and he would likely have done so if he believed his injury was work-related. He notes that his son, who also works at APAC and has a hearing problem, received notice from a doctor that his condition was probably inherited rather than work-related. Aware of this notice, Ferrell had further reason to rely on his long-held belief regarding the cause of his hearing loss. Finally, Ferrell only had an eighth grade education.

The only medical evidence presented at trial was the C-32 Form. This Form, and the medical records attached to it, indicate that Dr. Bell made two separate diagnoses: (1) conductive hearing loss and (2) permanent sensorineural loss. Dr. Bell's records indicate that the second diagnosis is based on the harm caused to the nerves by exposure to loud noise. The first diagnosis of conductive loss, however, is not correlated to loud noise but rather appears to be caused by physical damage to the inner ear; as noted, Ferrell has had problems with his ears since childhood.

These records also show that Dr. Bell appeared to consistently diagnose Ferrell as suffering from conductive hearing loss, from 1974 through 1994, for during this time no mention is made of sensorineural loss or exposure to loud noise. Then, after the 1994 surgery, Dr. Bell briefly mentions in his post-operative report that in addition to conductive loss Ferrell had sustained sensorineural loss. The only other mention of sensorineural loss is when he treated Ferrell on two occasions in 1998. After these appointments, Dr. Bell wrote in a letter and then in a report that forms the basis of the C-32 Form that Ferrell suffers from sensorineural loss because of his exposure to loud noise at work. Since Dr. Bell did not testify at trial or in a deposition there is no explanation for this apparent inconsistency in the record.

Ferrell testified that Dr. Bell never told him that his exposure to noise had anything to do with his hearing problem; he testified that they never discussed the possible causal relation between his work environment and hearing loss in their twenty-four-year relationship. Again, Dr. Bell's medical reports, without his testimony, do not explain or clarify this unusual fact. As noted, Ferrell testified that he had no knowledge of the sensorineural diagnosis until the day before trial.

At trial, the court considered Dr. Bell's medical reports and Ferrell's testimony. The court found that Ferrell failed to meet the statute of limitations period. The court addressed the merits of his suit and concluded that his injury was not work-related: Dr. Bell's twenty-year conductive loss diagnosis outweighed his more recent finding of sensorineural loss. Ferrell appealed the trial court's decision. The case was referred to the Special Workers' Compensation Appeals Panel but was withdrawn from the Panel prior to its issuance of a memorandum opinion so this Court could review several issues. The first issue is whether Ferrell's suit is barred by the statute of limitations. The second is whether the preponderance of the evidence establishes that Ferrell's hearing loss is work-related. We also consider the procedure used by the trial court in referring workers' compensation cases to the Clerk and Master.

**Standard Of Review**

The Workers' Compensation Law directs that "[r]eview of findings of fact by the trial court shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(e)(2). Where the trial judge has seen and heard the witnesses, especially where issues of credibility are involved, a reviewing court must give considerable deference to the trial court's findings. See Wells v. Tennessee Board of Regents, 9 S.W.3d 779, 783 (Tenn. 1999). No such deference is warranted in reviewing documentary proof. See id. at 783-84. Questions of law are reviewed de novo, without a presumption of correctness. See Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 628 (Tenn. 1999). The burden of proof on the issue of causation, as with every essential element of a claim, lies with the employee. See White v. Werthan Indus., 824 S.W. 2d 158, 159 (Tenn. 1992).

## ANALYSIS
### A. The Statute of Limitations

An employee must commence a workers' compensation action within one year after the accident resulting in injury occurred. Tenn. Code Ann. § 50-6-203(a). This statute of limitations period begins to run when a party knew, or in the exercise of reasonable diligence should have known, that he sustained a compensable injury. See Livingston v. Shelby Williams Indus., Inc., 811 S.W.2d 511, 515 (Tenn. 1991); Hawkins v. Consolidated Aluminum Corp., 742 S.W.2d 253, 255 (Tenn. 1987).

The trial court found that Ferrell failed to comply with the one-year time limit. When pressed by Ferrell's attorney to specify the date when the limitations period had expired, the court stated that the period would never have expired because Ferrell's injury was not work-related; Ferrell would not have been put on notice that he sustained a compensable injury because the evidence shows that his injury was not compensable. As Ferrell emphasizes, this reasoning somewhat confuses the issue. Nevertheless, we think that the trial judge's ruling is also based on his belief that Ferrell had no reasonable justification for waiting until 1998 to file suit.

Ferrell testified that he first became aware that his hearing loss was work-related when he saw Dr. Bell's C-32 Form on August 25, 1999, the day before trial. Dr. Bell, who issued this report in March 1999, found that Ferrell's condition was "more probably than not" work-related. Since there is no evidence to the contrary, we conclude that Ferrell had no actual knowledge that his condition was work-related until after he filed his complaint, which obviously satisfies the statute of limitations.

We also conclude that Ferrell exercised reasonable diligence in determining the cause of his hearing loss. Unlike an accident caused by a machine or a slippery surface, no particular event or series of events would have made it obvious to Ferrell that he had sustained a compensable injury. He first encountered problems with his ears as a child. After starting work for APAC, his hearing condition began to decline and then gradually deteriorated over the course of twenty years. Ferrell, unable to determine the cause of his hearing loss, sought out Dr. Bell for advice and treatment. He told Dr. Bell about his working conditions, but, according to Ferrell's testimony, Dr. Bell never discussed with him the possibility that his work caused or aggravated his hearing loss, nor did he caution him to limit his exposure to loud noise. Instead, Dr. Bell consistently diagnosed Ferrell for over twenty years as having conductive hearing loss.

Because of his doctor's consistent advice and the absence of any warnings to avoid exposure to loud noise, Ferrell reasonably believed that he had not sustained a compensable injury. Normally, an employee ought to be able to rely on his doctor's advice. This is especially true in the case of a gradual injury whose cause cannot be determined by a layperson. We find that Ferrell neither knew nor should have known that he had sustained a compensable injury until literally the day before trial. We therefore hold that the statute of limitations had not expired.

## B. Causation

Despite its ruling on the statute of limitations issue, the trial court reached the merits of Ferrell's claim and found Dr. Bell's conclusion that his hearing problem was "more probably than not" work-related difficult to believe. As noted, we review the trial court's finding "de novo...accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(e)(2).

Ferrell argues that the trial court erred because the only medical proof offered at trial was the C-32 Form in which Dr. Bell states that he suffers from sensorineural loss, caused by exposure to loud noise.[1] While it is true that he suffered from a hearing condition as a child, Ferrell argues, his condition deteriorated considerably because of his exposure to noise at work. Ferrell correctly states the applicable rule of law: exacerbation of a preexisting injury is compensable if it causes actual progression of the preexisting condition. See Sweat v. Superior Indus. Inc., 966 S.W.2d 31, 33 (Tenn. 1998).

There is no question that Ferrell was exposed to loud noise for many years while doing construction work for APAC. If Dr. Bell's medical testimony consisted entirely of his 1998 diagnosis, which formed the basis of the C-32 Form, as well as the reference to sensorineural loss in the 1994 post-operative report, Ferrell would have a solid case. But the record shows many years of what appears to be the contrary diagnosis of conductive loss. We say "appears" because we cannot be certain that the diagnosis records from 1974 to 1999 are irrefutably inconsistent. The absence of any testimony from Dr. Bell leaves too many questions unanswered. For instance, is diagnosis in this area so difficult that a doctor could be mistaken for twenty years in thinking that Ferrell suffered from conductive loss? If so, why does Dr. Bell now believe that Ferrell's condition is "more probably than not" work-related? Perhaps most important – assuming Ferrell's testimony is accurate – why did Dr. Bell never caution Ferrell to stay away from loud noise at work?

Without answers to these questions, and a more thorough explanation of the medical records, we, like the trial court, find the presence of a long-standing diagnosis of one condition and a very recent diagnosis of a different condition puzzling. Under the circumstances, we cannot say that the evidence preponderates against the findings of the trial court.

---

[1]Ferrell also argues that the trial court improperly referred to his own knowledge of the difference between conductive and sensorineural loss, based in part on what the judge had learned in high school. While the judge did make such comments, it is clear from the record that the court's ruling is based on a reading of the medical records, which led the judge to question Dr. Bell's final diagnosis. We therefore need not address the issue of judicial notice, which Ferrell argues in his brief, but instead confine our analysis to whether the evidence in the record preponderates against the trial court's dismissal of Ferrell's claim.

## C. The Procedure for Appointing Special/Substitute Judges

In the exercise of our supervisory authority over the judicial system of this State,[2] we also deem it necessary to address the alleged standing order by which the Clerk and Master was designated as substitute judge (Circuit Judge Pro Tem) to hear this and all other workers' compensation cases arising in the thirty-first judicial district.

Article VI, § 11 of the Tennessee Constitution provides that

The Legislature may by general laws make provision that special Judges may be appointed, to hold any Courts the Judge of which shall be unable or fail to attend or sit; or to hear any cause in which the Judge may be incompetent.

Under the authority of this constitutional provision, the General Assembly has enacted several statutes relating to the appointment of special/substitute judges including two statutes that are pertinent to the issue in this appeal. Tennessee Code Annotated section 17-2-118 provides that:

(a) If, for good cause, including, but not limited to, by reason of illness, physical incapacitation, vacation or absence from the city or judicial district on a matter related to the judge's judicial office, the judge of a state or county trial court of record is unable to hold court, such judge shall appoint a substitute judge to hold court, preside and adjudicate.

(b) A substitute judge shall possess all of the qualifications of a judge of the court in which the substitute is appointed.

(c) No substitute judge may be appointed for a period of more than three (3) days; provided, that any such judge appointed pursuant to this section may finish any trial that is commenced during the period of appointment.

(d) A substitute judge appointed pursuant to this section shall have no authority to award fees except those that are statutory.

(e) A substitute judge shall not preside over a cause without a consent form signed by all litigants who are present at the beginning of the proceeding. Such consent form shall plainly state that the substitute judge has not been duly elected by the citizens of the judicial district or appointed by the governor but has been appointed pursuant to this section. Further, the consent form shall include the name of the lawyer appointed as substitute judge, the judge of the court in which such substitute judge is sitting, the date for which the substitute judge was appointed, and

---

[2]Tenn. Const. art. I, § 1; Tenn. Code Ann. §§ 16-3-501-503; see also Petition of Burson, 909 S.W.2d 768, 773 (Tenn. 1995).

the reason for the regular judge's absence. The consent form shall be transmitted and maintained on file for public inspection at the administrative office of the courts in Nashville.

(f) The provisions of subsections (a)-(e) shall not apply where a judge finds it necessary to be absent from holding court, and appoints as a substitute judge:

(1) A duly elected or appointed judge of any inferior court; or

(2) A full-time officer of the judicial system under the judge's supervision whose duty it is to perform judicial functions, such as a juvenile referee, a child support referee or clerk and master, who is a licensed attorney in good standing with the Tennessee supreme court. Such judicial officer shall only serve as special judge in matters related to that officer's duties as a judicial officer.

Notwithstanding the provisions of subsections (a)-(e), a judge shall have the authority to appoint a substitute judge as provided in this subsection.

(Emphasis added.) A very similar statutory provision is codified at Tenn. Code Ann. § 17-2-122 and provides:

(a) Notwithstanding the provisions of § 16-15-209 or § 17-2-109 or any other relevant provision to the contrary, a judge shall have the authority to appoint a special judge as provided in this section.

(b) The provisions of § 16-15-209 and § 17-2-109 and any other relevant provision, shall not apply where a judge finds it necessary to be absent from holding court, and appoints as a substitute judge an officer of the judicial system under the judge's supervision whose duty it is to perform judicial functions, such as a juvenile referee, a child support referee or clerk and master, who is a licensed attorney in good standing with the Tennessee supreme court. Such judicial officer shall only serve as special judge in matters related to their duties as judicial officer.

(Emphasis added.) Where a judge finds it necessary to be absent from holding court, these statutes authorize the judge to appoint a clerk and master to act as special judge so long as the clerk and master is both a licensed attorney in good standing with this Court and is serving as special judge only in matters related to his or her duties as judicial officer.

We emphasize that the statute directs that the absence be necessary. A judge may not use mere convenience as a basis for being "absent from holding court." We agree with the Attorney General that "necessary" as used in this context should be understood in a restrictive sense, "i.e. indispensable as opposed to a more liberal construction, i.e. convenient." Tenn. Op. Atty. Gen. No.

96-003. <u>See</u> <u>also</u> <u>State v. Black</u>, 897 S.W.2d 680, 683 (Tenn. 1995) ("Although opinions of the Attorney General are not binding on courts, government officials rely upon them for guidance; therefore, [such] opinion[s] [are] entitled to considerable deference.")

These statutes permitting a trial judge to appoint a clerk and master as a special judge, like all statutes, should not be read in isolation.[3]  Another statute imposes upon state trial court judges an affirmative duty to interchange under certain circumstances.  Tennessee Code Annotated section 17-2-202 provides that a judge has an affirmative duty to interchange if:

> (1) A judge has died or is unable to hold court; (2) Two (2) or more judges have agreed to a mutually convenient interchange; (3) The judge is incompetent under the provisions of § 17-2-101; or (4) The chief justice of the supreme court has assigned by order a judge to another court pursuant to Supreme Court Rule 11.

In addition, Tenn. Code Ann. § 16-2-509 (e) directs that

> [i]f a presiding judge is unable to correct a caseload imbalance or reduce docket delays utilizing the available judges within the district over which the judge presides, <u>it is the affirmative duty of such presiding judge to contact other presiding judges and request assistance or contact the supreme court and request assistance pursuant to §</u> <u>16-3-502.</u>

(Emphasis added.)

Judges have an obligation to discharge the affirmative duties imposed by these statutes. Supreme Court Rule 10, Canon 3A declares that "[t]he judicial duties of a judge take precedence over all the judge's other activities" and that a judge's judicial duties include "all the duties of the judge's office prescribed by law."   The term "law" is defined by Rule 10 to include "court rules as well as <u>statutes</u>, constitutional provisions, and decisional law."  (Emphasis added.)  Accordingly, reading these statutes and rules together, we conclude that a trial judge should appoint a clerk and master to act as a special/substitute judge in his or her absence only if the trial judge determines it is not possible either to interchange pursuant to Tenn. Code Ann. § 17-2-202 or to obtain assistance from another presiding judge or from this Court pursuant to section 16-2-509(e).  Consistent with these statutes, Tennessee Supreme Court Rule 11 VII(c)(3) explains the procedures that must be followed before appointing a special judge as follows:

---

[3]<u>See, e.g.</u>, <u>State v. Turner</u>, 913 S.W.2d 158, 160 (Tenn. 1995) ("In interpreting statutes, we are required to construe them as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose."); <u>State ex rel. McGhee v. St. John</u>, 837 S.W.2d 596, 604 (Tenn. 1992) ("A statute must be construed as a whole and a particular section should not be read in isolation of the remainder of the statute."); <u>In re Adoption of Hatcher</u>, 16 S.W.3d 792, 795 (Tenn. Ct. App. 1999) ("We think however that the statute should be read as a whole, because statutes similar in subject matter must be construed so as to make the legislative scheme operate in a consistent manner.").

Where a judge of a trial court of record is . . . unable to hold court, as provided in Tenn. Code Ann. § 17-2-118, the following procedure shall be followed, in the sequence designated, for the selection of a substitute judge.

(1) The judge shall seek interchange in accordance with Tenn. Code Ann. § 17-2-201 et seq.;

(2) The judge shall apply to the presiding judge of the judicial district to effect an interchange with a judge of that judicial district in accordance with Tenn. Code Ann. § 16-2-509(d);[4]

(3) The presiding judge of the judicial district shall effect an interchange with a judge from another judicial district in accordance with Tenn. Code Ann. § 16-2-509(e);

(4) The presiding judge shall request from the director of the Administrative Office of the Courts the designation of a judge by the chief justice, in accordance with Tenn. Code Ann. §§ 16-3-502(3)(A) and 17-2-110.

If a trial judge is unable to interchange or obtain assistance from another presiding judge or this Court and therefore appoints the clerk and master or another judicial officer, the order of appointment should be either for a definite period of time or for a specific case. A standing order appointing a clerk and master as special/substitute judge to hear an entire class of cases is not appropriate.[5]

Applying these principles to this case, it appears that the proper procedure was not followed when the clerk and master was appointed "Circuit Judge Pro Tem."[6] Nonetheless, this procedural error does not require reversal. This Court has explained that

[a] judge *de jure* is one who is exercising the office of a judge as a matter of right: that is, one legally appointed and qualified to exercise the office. A judge *de facto* is one acting with color of right and who is regarded as, and has the reputation of, exercising the judicial function he assumes. An unconstitutional statute is sufficient to give color of right or authority to elect or appoint a judicial officer, and a person

---

[4]Interestingly enough, the thirty-first judicial district is the only judicial district in Tennessee that has only one judge who therefore will always be the presiding judge. Therefore, this portion of Rule 11 has no application in the thirty-first judicial district.

[5]We also note that orders referring cases to the clerk and master pursuant to Tenn. R. Civ. P. 53 should be on a case-by-case basis rather than a standing order of reference. See, e.g., Tenn. R. Civ. P. 53.01 ("The court in which any action is pending may appoint a Special Master therein.").

[6]The proper procedure is set out in a "Handbook for Presiding Judges," Supreme Court of Tennessee, Administrative Office of the Courts, 2000 Edition, Chapter 3, "Interchange and Designation of Judges," attached hereto as Appendix (1).

elected or appointed by authority of such a statute is a *de facto* judge. A judge who actively assumes the duties of his office after he has been appointed by the governor of the state, or has been elected by the people, is at least a *de facto* judge even though facts aliunde might disclose irregularities in the appointment or the election. A judge *de facto* is a judge *de jure* as to all parties except the state, and his official acts are binding on third persons and the public.

\* \* \* \*

The judicial acts of one in possession of a judicial office created and in existence by law, under color of right, assuming and exercising the functions of such office with a good faith belief in his right to exercise such authority, involved and acquiesced in by the parties, the bar, court officials and the public, are those of a *de facto* officer.

State ex rel. Newsom v. Biggers, 911 S.W.2d 715, 718 (Tenn. 1995) (internal citations and quotations omitted). Although it appears that the proper procedure was not followed in this case, the Clerk and Master unquestionably was acting under color of right. Two statutes specifically authorize the appointment of clerks and masters as special judges. Moreover, the parties consented to the appointment and have not objected on appeal. Under these circumstances, we hold that the Clerk and Master is a *de facto* judge and therefore affirm the judgment of the trial court that Ferrell has not sustained a loss compensable under the Workers' Compensation Law. The costs of this appeal are taxed to the appellant.

FRANK F. DROWOTA, III, JUSTICE

-10-

Where a judge of a trial court is incompetent to try a case, or fails to attend, or is unable to hold court, the following procedure shall be followed, in the sequence designated, for the selection of a substitute judge.

**A. INTERCHANGE PROCEDURE (PURSUANT TO SUPREME COURT RULE 11 AND APPLICABLE STATUTES.) FOLLOW IN THE SEQUENCE DESIGNATED.**

    1) The judge shall seek to interchange with another trial court judge.

    2) The judge shall apply to the presiding judge of the judicial district to effect an interchange with an active judge of that judicial district.

    3) The presiding judge of the judicial district shall effect an interchange with the presiding judge from another judicial district.

    4) The presiding judge of the judicial district shall request from the Administrative Office of the Courts the designation of a judge by the Chief Justice.

Only if the procedures set forth above fail to provide a judge to preside over the docket or case will a judge appoint a lawyer to preside as a substitute judge. Such appointments must conform to the following requirements:

**B. ALTERNATE PROCEDURE - LAWYER AS SUBSTITUTE JUDGE**

    1) The attorney appointed as a substitute judge must possess all the qualifications of a judge, including age and residency requirements, and must be in good standing. The substitute judge shall be subject to the Code of Judicial Conduct.

    2) The substitute judge shall take an oath of office as provided in Tenn. Code Ann. § 17-2-120, and the substitute judge shall certify compliance by affixing his or her signature to the consent form.

    3) The authority of a substitute judge to fix fees pursuant to Tenn. Code Ann. § 17-2-118 is limited to cases in which the exact amount of the fees is set by statute.

    4) The substitute judge must ensure that all litigants who are present at the beginning of each proceeding give their consent to the use of a substitute judge in their case. All litigants who are present at the beginning of the proceedings in a case and the attorneys of record for all parties who consent to the service of a substitute judge must complete Part B of the substitute judge consent form. Without such consent,

the substitute judge shall not preside on that case. Part C of the substitute judge consent form must be completed by the substitute judge in each case in which that judge presides.

5)      The incompetent or absent judge must complete Part A of the substitute judge consent form. The judge must specify the reason for his or her incompetence or absence. If the judge cites absence for a cause other than a reason listed in Tenn. Code Ann. § 17-2-118(a), the specific reason for the absence must be set forth on the form.

6)      The clerk of the court shall certify that the appointment was made and that the substitute judge took the statutory oath of office and that the oath of office was filed in the clerk's office. The certification shall be made on Part D of the substitute judge consent form.

7)      At the end of each month, all substitute judge consent forms will be transmitted by the presiding judge of the judicial district to the Administrative Office of the Courts, Suite 600, Nashville City Center, 511 Union Street, Nashville, Tennessee 37219, where they will be available for public inspection during regular business hours. Such forms shall be maintained on file at the Administrative Office of the Courts for at least eight (8) years after they are received.

The substitute judge provisions listed above shall not apply where a judge appoints as a substitute judge:

a)      a duly elected or appointed judge of any inferior court; or

b)      a full-time officer under the judge's supervision whose duty it is to perform judicial functions, such as a juvenile referee, a child support referee, or clerk and master, who is a licensed attorney in good standing with the Tennessee Supreme Court.

(See Supreme Court Rule 11 and Tenn. Code Ann. § 17-2-118.)