IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 12, 2004

**IN RE: PETITION FOR CHANGE OF NAME**
**CHARLES GRANNIS, PETITIONER**

**Appeal from the Probate Court for Davidson County**
**No. 03P736     Mary Ashley Nichols, Special Judge**

**No. M2003-01242-COA-R3-CV - Filed June 15, 2004**

The trial court denied a Petition for Name Change. Among the allegations the Petitioner raises on appeal are that the master or special judge who denied his Petition was biased against him and that she was not authorized to act as a judge. We do not find sufficient evidence of bias in the record to justify reversal on that ground. We do find that the record is devoid of proper documentation of the basis of the master's authority to sit as a substitute judge. However, we need not determine whether reversal is required because of that deficiency, because we find that the trial court failed to articulate and the record fails to demonstrate any legally sufficient reason for denying the Petition. Therefore, the denial and dismissal of the Petition must be vacated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court**
**Vacated**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Charles Grannis, Nashville, Tennessee, Pro Se.

**OPINION**

The Petition for Name Change from which this case arose was filed on May 1, 2003, in the Seventh Circuit Court of Davidson County, Probate Division. The Petition was on a standard form, with answers to required questions to be filled in by the petitioner. *See* Davidson County Local Rule §39.08. Because of defective duplicating, some of the words of the appellant's answers are missing from the edge of the copy in the appellate record.

The Petition states that the appellant's birth name was Charles R. Grannis. Because the Petition also reveals that to be his current legal name, we will refer to him in this opinion as Mr. Grannis, even though he declares that he detests that name. The Petition shows that Mr. Grannis has

used other names twice before. He became Roby Kristian in the 1970's and then Jesse Holliday in the 1990's. He now wished to change his name to Josh Holliday. His reason for requesting a change was "my previous name has been besmirched (dirtied) by conviction, and repossessed houses, loss of employment, credit . . . [unintelligible]."

In response to other questions, the appellant answered that he had been convicted of a felony, and that he was not seeking the name change to evade creditors, defraud others, evade legal process, or for any unlawful reason. The explanation of convictions on the back of the form mentions a 1993 D.U.I. and an "unlawful" conviction in federal court that resulted in a five-and-a-half year sentence. The nature of the offense for which he was convicted is unclear because of missing words on our copy of the Petition.

Mr. Grannis's Statement of the Evidence gives the following account of the events that occurred on the day his Petition was to be heard: Mr. Grannis sat in the court pews awaiting the judge's entrance when a woman entered, took the bench, announced her name to be Marsh Nichols, and declared that she was a court master sitting on the bench under the authority of Judge Frank Clement, Jr.

According to the Statement of the Evidence, seventeen cases were on the docket, and Mr. Grannis was the last party to be called. The sixteenth case was also a name change, which Ms. Nichols granted after a brief conversation. When Mr. Grannis was called, Ms. Nichols asked him only one question: "Have you ever been convicted of a felony?" Mr. Grannis answered yes, and Ms. Nichols rapped the gavel and proclaimed "Denied," without stating any reason for the denial. This appeal followed.

## I. A SPARSE RECORD

We have been called upon to render a decision in this case on the basis of a very limited record. There was no court reporter present at the hearing in the court below, and no indication that the proceedings were recorded by any other means. The final order is simply an Order of Name Change, signed as having been approved for entry by the pro se petitioner, but with a slash and the word "Denied" across the line reserved for the judge's signature, followed by initials and the date 5/6/03.

Mr. Grannis's Notice of Appeal left the space for the designation of the appellee blank, because he did not know who should be considered the opposing party. After he filed the Notice, this court entered an order to inform him that his appeal would be dismissed if he did not comply with the provisions of Tenn. R. App. P. 24 by timely filing a transcript, a Statement of the Evidence, or a notice that neither would be filed.

-2-

He subsequently filed a Statement of the Evidence with the trial court,[1] which combines his account of the proceedings, as set out above, with arguments as to the reasons he believes those proceedings to be invalid. Thus, the appellant's initial Petition, his Statement of the Evidence, and his brief are our sole sources of information about the facts of this case. There is no opposing brief. Despite the sparsity of the record, however, we believe there is enough upon which to base our decision.

The appellant asserts three arguments for reversal: the substitute judge did not have the authority to decide his case; that she showed bias and prejudice against him; and that she misapplied the law in denying his Petition. We will address each of these issues in turn.

## II. THE AUTHORITY OF THE JUDGE

Mr. Grannis contends that Ms. Nichols was not authorized to sit on the bench and pass judgment on his Petition. He recites a number of statutes and constitutional provisions which define the sources of a judge's authority and set out qualifications for judicial office. The most relevant for purposes of his argument are Tenn. Const., Art. VI, Section 4, and Tenn. Code Ann. § 17-1-103, which state that judges are elected by qualified voters of their judicial districts. The appellant argues that there is no proof that Ms. Nichols was elected to her post, and he recites the fact that he has conducted research at the Vanderbilt law library, and could not find any legal authority which would permit a court master to act as a judge.[2]

The appellant has overlooked the statutes that authorize a judge to appoint a qualified officer of the judicial system to sit in his or her place. For example, Tenn. Code Ann. § 17-2-122 reads:

> (a) Notwithstanding the provisions of § 16-15-209 or § 17-2-109 or any other relevant provision to the contrary, a judge shall have the authority to appoint a special judge as provided in this section.

> (b) The provisions of §§ 16-15-209 and 17-2-109 and any other relevant provision shall not apply where a judge finds it necessary to be absent from holding court, and appoints as a substitute judge an officer of the judicial system under the judge's supervision whose duty it is to perform judicial functions, such as a juvenile referee, a child support referee or clerk and master, who is a licensed attorney in good

---

[1] Pursuant to Tenn. R. App. P. 24(c), an appellee may object to a Statement of the Evidence. In this case, there was no appellee, so the statement appears in the record uncontested. Our record does not reflect the trial court's approval of the Statement of the Evidence, but we must deem it approved under Tenn. R. App. P. 24(f).

[2] There is nothing in the record before us to indicate that Ms. Nichols was, in fact, a court master or other officer of the judicial system except the announcement attributed to her in Mr. Grannis's Statement of the Evidence. Mr. Grannis does not challenge this statement, and we will address the issues based on the presumption that Ms. Nichols is the master authorized in Tenn. Code Ann. § 17-2-123, set out later in the opinion.

standing with the Tennessee supreme court. Such judicial officer shall only serve as special judge in matters related to their duties as judicial officer.

The Tennessee Supreme Court has discussed the appointment of special or substitute judges, including the appointment of a clerk and master and other judicial officers. *In re Valentine*, 79 S.W.3d 539, 544-46 (Tenn. 2002); *Ferrell v. Cigna Property & Casualty Insurance Co.*, 33 S.W.3d 731, 736-39 (Tenn. 2000). Those opinions delineate the statutory prerequisites and appropriate procedures for such appointments. They make clear that judges may appoint as a substitute judge a judicial officer whose duty it is to perform judicial functions as long as that officer meets specified criteria and as long as the officer sits as special judge in matters related to that officer's duties as a judicial officer. *See* Tenn. Code Ann. §§ 17-2-118(f) & 17-2-122(b).

In addition, another statute specifically addresses appointment of a master by the circuit court judges in Davidson County. That statute, Tenn. Code Ann. § 17-2-123, provides:

> (a) Notwithstanding any other provision of law to the contrary, in any county having a metropolitan form of government and having a population of more than five hundred thousand (500,000) according to the 1990 federal census or any subsequent federal census, the circuit court judges of such county may appoint a full-time master to serve as a judicial officer in the absence of any one of such judges.

> (b) A master appointed pursuant to subsection (a) shall be an attorney licensed to practice law by the state of Tennessee and in good standing with the board of professional responsibility.

> (c) The compensation for a master appointed pursuant to this section shall be fixed by the presiding judge of the judicial district and shall be paid from any fund appropriated for such purpose by the county governing body.

> (d) The master shall have all the powers specified in § 17-2-118 and the powers granted to masters by Rule 53 of the Tennessee Rules of Civil Procedure.

It is thus apparent that a properly appointed master or other judicial officer may sit as a substitute judge under the circumstances set out by statute. Consequently, if Ms. Nichols is the duly-appointed master authorized by Tenn. Code Ann. § 17-2-123, she had authority to hear this case. That finding does not end the inquiry, however, because our Supreme Court has made it clear that there are also procedural requirements for the appointment of a substitute judge, including one who is an officer of the judicial system.

In *Ferrell*, the Supreme Court explained that its Rule 11 VII(c)(3) established the procedures that must be followed prior to appointment of a judicial officer, in that case the clerk and master, as a special judge, including seeking interchange and requesting designation of a special judge by the chief justice. 33 S.W.3d at 738-39. If the trial judge is unable to obtain interchange or assistance

and consequently appoints a substitute judge, including a judicial officer such as clerk and master, then "the order of appointment should be either for a definite period of time or for a specific case." 33 S.W.3d at 739.

In *Ferrell*, the Court found that the proper procedure had not been followed in appointing the clerk and master to hear a class of cases. Nonetheless, the Court determined that this procedural error did not require reversal, holding that the clerk and master was a *de facto* judge because:

> . . . the Clerk and Master unquestionably was acting under color of right. Two statutes specifically authorize the appointment of clerks and masters as special judges. Moreover, the parties consented to the appointment and have not objected on appeal.

33 S.W.3d at 739.

Similarly, in *In re Valentine*, the Court considered a challenge to the authority of a juvenile court referee to decide a termination of parental rights case. Again, the Court determined that authority existed under the statutes for such appointment. A separate question was whether the proper procedure had been followed. The Court found that any objection to procedure had been waived, but noted:

> After our decision in *Ferrell*, special judges should confirm that their authority to preside is contained in the record.

79 S.W.3d at 545 n.5.

We have found nothing in the record of the present case to demonstrate the basis of Ms. Nichols' authority or appointment. However, we pretermit the question of whether this omission requires reversal of her order, because we find that reversal is warranted on other grounds.

### III. BIAS OR PREJUDICE

The appellant argues that the master showed bias or prejudice towards him. He notes that the Petitioner whose case was called before his also sought a name change, that the master spoke pleasantly to that individual, that she didn't ask him if he had committed a felony, and that she granted his Petition. The appellant complains that when his turn came, the judge glared at him when she asked him if he had ever been convicted of a felony, that she failed to explore why he wished to change his name, and that she denied his Petition summarily.

"All litigants are entitled to the 'cold neutrality of an impartial court' and have a right to have their cases heard by fair and impartial judges." *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001); *Caudill v. Foley*, 21 S.W.3d 203 (Tenn. Ct. App. 1999); *Kinard v. Kinard*, 986

S.W.2d 220, 227 (Tenn. Ct. App.1998). A trial before a biased or prejudiced fact finder is considered a denial of due process. *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App.1998).

Rule 10, Canon 3 of the Rules of the Supreme Court requires a judge to recuse himself or herself "in a proceeding in which the judge's impartiality might reasonably be questioned. . . ." The Canon then lists several types of prior relationships between a judge and the parties or attorneys who appear before her that would reasonably lead to such questioning. *See also Davis*, 38 S.W.3d at 565; *Wilson*, 987 S.W.2d at 562; *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App.1994).

Mr. Grannis did not ask Ms. Nichols to disqualify or recuse herself at the hearing, and he does not ask for recusal in this appeal. He also does not assert any basis for his belief that Ms. Nichols was biased against him, other than her demeanor and the fact that she ruled against him. There is no evidence of any prior relationship between Mr. Grannis and Ms. Nichols that might raise an inference of bias. In fact, there is no reason to believe that they ever met prior to their encounter in the courtroom.

Perhaps the appellant means to argue that the judge had a bias against convicted felons, and that she was prejudiced against him because his Petition contained the information that he had been convicted of a felony. But, there is no evidence of extra-judicial comments on her part that would support an inference of such a prejudice.

Additionally, "[a]dverse rulings by a trial court are not usually sufficient grounds to establish bias." *Keisling v. Keisling*, 92 S.W.3d 374 (Tenn. 2002); *Alley*, 882 S.W.2d at 821. We also do not believe that bias can be established by the fact that another litigant may have received a more favorable result in a similar case, because differences in fact can lead to different results. It therefore appears to us that the facts recited by appellant do not sufficiently allege bias or prejudice to support a reversal of the trial court's ruling on that basis.

## IV. LAW OF NAME CHANGE

The appellant has cited many opinions from different jurisdictions for the proposition that an individual has broad rights under the common law to choose the name by which he or she will be known. These include cases in which the courts have affirmed legal changes of name for inmates, *In re Cruchelow*, 926 P.2d 833, 834 (Utah 1996); *In Re Application of Knight*, 537 P.2d 1085 (Colo. App. 1975), and for non-citizen resident aliens or refugees, *Application of Pirlamarla*, 504 A.2d 1238, 1241 (N.J. Superior Law Ct. 1985); *In re Novogorodskaya*, 429 N.Y.S.2d 387 (N.Y. Civic. Ct. 1980).

We in no way dispute the validity of this general proposition. It appears to us, however, that most, if not all, jurisdictions also hold that the common-law right is not absolute. For example, the Supreme Court of Wisconsin recently stated that "Wisconsin does recognize the common law right to change one's name through consistent and continuous use, as long as the change is not effected for a fraudulent purpose." *State v. Hansford*, 580 N.W.2d 171, 180 (Wis. 1998).

Thus, the common law has long recognized an individual's right to use any name he or she chooses as long as use of the chosen name did not interfere with another's rights. *In re Joseph*, 87 S.W.3d 513, 515 (Tenn. Ct. App. 2002).

In Tennessee (as in most other states), a person may change his or her name at will without court action by simply adopting and using a new name, "as long as the change does not interfere with another's rights and is not being made for fraudulent purposes." *In re Lackey*, No. 01-A-01-9010-PB00358, 1991 WL 45394 (Tenn. Ct. App., April 5, 1991) (no Tenn. R. App. P. 11 application filed), citing *Dunn v. Palermo*, 522 S.W.2d 679, 682 (Tenn. 1975).

However, formal name changes must be accomplished through statutory procedures. *In Re Application of Knight*, 537 P.2d at 1086. When a party seeks a court order recognizing a legal change of name, limitations derived from statute or decisional law may come into play.

In some states, inmates or persons previously convicted of felonies may be prevented from legally changing their names. *See In Re Verrill*, 660 N.E.2d 697, 698 (Mass. App. 1996); *In the Matter of Mendelson*, 572 N.Y.S.2d 1014 (1991); *In re Parrott*, 392 S.E.2d 48 (Ga. App. 1990). The rationale in such cases is "to protect the legitimate governmental interest in being able to identify persons sought on warrant or detainer, and to preserve the criminal history of felons." 57 AM. JUR. 2D *Names* § 18 (2001).

Some courts have stated that a trial judge has the discretion to deny a name change if there is evidence that third parties will be harmed by the change, *Matter of Natale*, 527 S.W.2d 402, 405 (Mo. App. 1975), if the change is sought for fraudulent or criminal purposes, *Application of Pirlamarla*, 504 A.2d 1238, 1241 (N.J. Super.L. 1985), or if there is an overriding social policy which militates against that particular change of name. *In Re Change of Name of Mary Ravitch*, 754 A.2d 1287 (Pa. Superior. Ct. 2000).

Trial courts must exercise their discretion when ruling on petitions for change of name. *See In the Matter of Mees,* 465 N.W.2d 172, 173 (N.D. 1991). However, such discretion is limited because of the breadth of the common-law right. "Although a trial court normally has wide discretion in matters of this type, the court must show some substantial reason before it is justified in denying a petition for a name change." *In re Cruchelow*, 926 P.2d 833, 834 (Utah 1996). *See also Moscowitz v. Moscowitz,* 385 A.2d 120, 122 (N.H. 1978); *In Re Application of Knight*, 537 P.2d at 1086.

Like most of the above cases, the leading Tennessee case on the law of surnames affirms the common law right to change one's name, but also recognizes that this right is not unlimited. *Dunn v. Palermo* involved the right of a married woman to use her own surname rather than her husband's. In affirming the wife's right, our Supreme Court quoted with approval language from "a brilliant and scholarly opinion" from the State of Maryland, which recognized the right "of any person *absent a statute to the contrary* to adopt any name by which he may become known, and by which he may

transact business and execute contracts and sue or be sued." *Palermo*, 522 S.W.2d at 686, quoting *Stuart v. Board of Supervisors*, 295 A.2d 223 (Md. 1972) (emphasis added).

The Tennessee General Assembly has enacted statutes which set out the procedures for changing one's name, but which also create a limitation on the court's authority to ratify such a name change. Tenn. Code Ann. §§ 29-8-101,-105. With the exceptions stated therein, these statutes provide an optional procedure that is intended not to "diminish an individual's right to change his or her name but rather to provide an expeditious procedure for doing so." *In re Joseph*, 87 S.W.3d at 515. The relevant statute provides:

> (a) The circuit, probate and county courts have concurrent jurisdiction to change names and to correct errors in birth certificates on the application of a resident of the county in which the application is made.
>
> (b)(1) Notwithstanding any other provision of law to the contrary, persons who have been convicted of the following offenses shall not have the right to legally change their names:
>
> (A) First or second degree murder; or
>
> (B) Any offense, the commission of which requires a sexual offender to register pursuant to the Sexual Offender Registration and Monitoring Act, codified in title 40, chapter 39.
>
> (2) The provisions of this subsection shall not apply if the name change is the result of a lawful marriage.
>
> (c) No public funds shall be expended to change the name of any person who is an inmate in the custody of the department of correction.

Tenn. Code Ann. § 29-8-101.

As this statute makes clear, persons convicted of certain crimes are precluded from obtaining a court order changing his or her legal name. As it also makes clear, conviction of other felonies resulting in sentencing to prison does not automatically foreclose a name change. *In re Joseph*, 87 S.W.3d at 514-15; *In re Ely*, No. M2000-01937, 2004 WL 383304 at *1 (Tenn. Ct. App. March 1, 2004) (no Tenn. R. App. P. 11 application filed)) (holding "conviction of a felony, by itself, is not grounds to deny a name change Petition," and a denial based solely on the conviction of a felony lacks legal foundation).

The requirements under the statute are not burdensome. A verified petition stating the petitioner is a resident of the county and giving the reasons for seeking the name change is generally all that is required. *In re Joseph*, 87 S.W.3d at 515. *See also McCullough v. McCullough*, No. 88-

61-II, 1988 WL 60485, at *1 (Tenn. Ct. App. June 17, 1988) (no Tenn. R. App. P. 11 application filed) (holding "all that is required is that a live person file a sworn application in the proper court of the county of his residence 'giving his reasons for desiring the change.'") There is no requirement of a showing of good cause or that the reason given for the change be good and sufficient. *In re Joseph*, 87 S.W.3d at 515; *McCullough*, 1988 WL 60485, at *1.

When the requirements of the statute, few as they are, have been met, a court should deny a name change only when good reason, such as those established at common law, exists. *In re Joseph*, 87 S.W.3d at 515; *McCullough*, 1988 WL 60485, at *1 (holding it is an abuse of discretion for a court to deny a name change for reasons other than those set out in the statute or which existed at common law).

In two cases involving name change requests by persons who were incarcerated at the time the Petition was filed, this court has held that the prisoner had the burden of showing he had not been convicted of one of the disqualifying offenses enumerated in Tenn. Code Ann. § 29-8-101. *In re Joseph*, 87 S.W.3d at 515; *In re Ely*, 2004 WL 383304, at *1. The form petition completed by Mr. Grannis simply asked the question whether he had been convicted of a felony, not whether he had been convicted of any of the disqualifying offenses, and he answered affirmatively. We are unable to decipher his description of the federal offense for which he was convicted, but there is nothing in the master's order to indicate she found he had been convicted of a disqualifying offense.[3]

If, as the appellant argues, Ms. Nichols denied his Petition solely because he admitted to having been convicted of a felony, then she did not apply the statute correctly. The record before us does not contain evidence justifying denial of the Petition on the basis of the statute or any common law ground. The court has not stated any such justification, and the record does not indicate any inquiry that could lead to a finding based on any of those grounds. Accordingly, we must vacate the order denying Mr. Grannis's request for a name change and dismissing his Petition. This does not mean that we are granting the Petition, because the record is insufficient for us to grant that relief, but only that we are remanding the case to the trial court for further proceedings on the Petition.

## V. CONCLUSION

The Order of the trial court is vacated. We remand this case to the Circuit Court of Davidson County for any further proceedings that may be necessary. Costs on appeal are waived.

---

PATRICIA J. COTTRELL, JUDGE

---

[3] The nature of the disqualifying offenses makes it unlikely any would have been the subject of a federal conviction.