IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 18, 2011

**SANDI D. JACKSON v. MITCHELL B. LANPHERE**

**Appeal from the Chancery Court for Sumner County**
**No. 2010D 184     Tom E. Gray, Chancellor**
**Judge John Gwin by Interchange**

---

**No. M2010-01401-COA-R3-CV - Filed August 12, 2011**

---

The petitioner for an order of protection appeals the trial court's decision dismissing her petition. While we reject most of the assignments of error identified by the petitioner, we agree that the trial court erred in failing to make findings of fact and conclusions of law as now required by Tenn. R. Civ. P. 41.02. We therefore vacate the trial court's order and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S,. and RICHARD H. DINKINS, J., joined.

Sandi D. Jackson, Hendersonville, Tennessee, Pro Se.

Debra L. Dishmon, Lebanon, Tennessee, for the appellee, Mitchell B. Lanphere.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Sandi Jackson filed a petition for orders of protection against Mitchell Lanphere in Sumner County Chancery Court on June 4, 2010. Ms. Jackson filed the petition on behalf of herself and the parties' minor child, Keely. Ms. Jackson's petition alleged that, on May 30, 2010, Mr. Lanphere sent threatening text messages and caused Ms. Jackson and the child to fear for their safety. This occurred after Mr. Lanphere allegedly failed to pick Keely up on May 29, 2010, for his court-ordered weekend parenting time. The chancery court entered an ex parte order of protection, and the case was set to be heard on June 16, 2010.

On June 15, 2010, Mr. Lanphere filed a motion to dismiss or to transfer jurisdiction and venue. Because there were pending custody proceedings in the Sumner County Juvenile Court, Mr. Lanphere argued that the case should be transferred to that court. He further asserted that Ms. Jackson's petition for an order of protection in chancery court was "an attempt to forum shop and circumvent" the order of the juvenile court.[1] Attached to Mr. Lanphere's motion was an April 2010 agreed order from the Sumner County Juvenile Court setting out the parties' parenting schedule.

The parties appeared for the hearing in chancery court on June 16, 2010. Ms. Jackson represented herself. According to the statement of the evidence, no proof was heard. The court denied Mr. Lanphere's motion to dismiss and did not dissolve the order of protection. In an order entered on June 18, 2010, the court stated that there were matters pending before Judge Gwin, sitting by interchange in the Sumner County Juvenile Court, that a trial was set for June 24, 2010, and that Judge Gwin had "agreed to hear this matter by interchange with the Chancery Court of Sumner County, Tennessee at Gallatin." The court then ordered that the case be heard by interchange by Judge Gwin.

At the hearing on June 24, 2010, Ms. Jackson was represented by counsel. Judge Gwin heard testimony from the police officer who responded to Ms. Jackson's call at 2:14 a.m. on May 30, 2010, and from Ms. Jackson. Ms. Jackson also called as a witness a private investigator whom she had previously hired to do a background check on Mr. Lanphere. Mr. Lanphere objected on the basis that the private investigator, whom Ms. Jackson hired in 2004, would not offer testimony relevant to the current proceedings. The court agreed with Mr. Lanphere's objection and the witness was excused. After Ms. Jackson had presented her proof, Mr. Lanphere moved to dismiss the order of protection. Judge Gwin announced from the bench that there was not sufficient proof for an order of protection and that the petition was dismissed.[2]

On June 28, 2010, Ms. Jackson filed, pursuant to Tenn. R. Civ. P. 60.02, a motion to reconsider the June 16, 2010 order and to "regrant [sic] ex parte order of protection" on the grounds that a fraud had been perpetrated upon the court. Ms. Jackson also filed a notice of appeal from the June 18, 2010 order and a notice of appeal from the June 24, 2010 decision (for which the order had not yet been entered). In her motion to reconsider, Ms. Jackson

_____

[1]Mr. Lanphere's motion erroneously refers to the General Sessions Court of Wilson County. The confusion arises from the fact that Judge John Gwin of the Wilson County General Sessions Court was sitting by interchange in the Sumner County Juvenile Court.

[2]Judge Gwin then proceeded to consider matters pending between the parties in the Sumner County Juvenile Court, including Mr. Lanphere's petition for emergency custody.

asserted, in part, that Mr. Lanphere moved to transfer the order of protection out of chancery court "for the purpose of a change in jurisdiction and venue from a Court that would be familiar only with the facts of the instant case to a Court that Father's counsel believed so strongly would dismiss the ex parte order of protection that she motioned this Court to transfer the order . . . ."

On July 6, 2010, Judge Gwin entered his order from the June 24, 2010 hearing in Sumner County Chancery Court. The court held that Ms. Jackson "failed to prove by a preponderance of the evidence the allegations contained in the Petition for Orders of Protection." Costs were taxed against Ms. Jackson.

Ms. Jackson filed on July 6, 2010, another notice of appeal from the June 18, 2010 order providing that Judge Gwin would hear the order of protection and a notice of appeal from the denial of her order of protection.

On July 12, 2010, a hearing was held before Chancellor Gray on Ms. Jackson's motion to reconsider. In an order entered on July 23, 2010, the court found that Ms. Jackson's motion was not well-taken and denied it. The court stated that since Ms. Jackson filed a notice of appeal on June 28, 2010, it lacked jurisdiction to consider a Rule 60 motion. The court went on to deny allegations by Ms. Jackson that counsel for Mr. Lanphere had made ex parte statements to the court.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

With respect to issues regarding the admission or exclusion of evidence, we review the trial court's decision under an abuse of discretion standard. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). So, "we are not permitted to substitute our judgment for that of the trial court." *Id*. An appellate court "will set aside a discretionary decision only when the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). We review a trial court's discretionary decision to determine: "(1) whether the factual basis for the decision is supported by the evidence, (2)

whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives." *Id.*

ANALYSIS

We begin by noting that Ms. Jackson is representing herself on appeal and that she represented herself during a portion of the proceedings below. With respect to pro se litigants, we have previously stated the following guiding principles:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003) (citations omitted).

In her brief, Ms. Jackson sets out numerous issues, including such questions as whether the Sumner County Juvenile Court had subject matter jurisdiction over the parties and whether the Wilson County General Sessions Court had personal jurisdiction over the parties. These questions reflect a misunderstanding of the interchange process. Ms. Jackson's order of protection was brought in the Sumner County Chancery Court and remained in that court. Chancellor Gray, who issued the ex parte order of protection, entered an order on June 18, 2010, providing that the case would be heard by interchange by Judge Gwin. Thus, Judge Gwin, a judge of the Wilson County General Sessions Court who was hearing cases in the Sumner County Juvenile Court by interchange,[3] sat by interchange as chancellor in the Sumner County Chancery Court in order to hear and decide this case.

In light of this procedural clarification, we consider the issues raised to be as follows:

(1) Whether the chancery court erred in considering Mr. Lanphere's motion to dismiss.

---

[3]According to the appellee's brief, Judge Gwin was appointed by the Administrative Offices of the Court to hear by interchange the custody case between the parties in Sumner County Juvenile Court.

(2) Whether the chancery court erred in ordering that Judge Gwin would hear the order of protection.

(3) Whether Judge Gwin erred by failing to make specific findings of fact and conclusions of law in his order dismissing the petition for an order of protection.

(4) Whether Judge Gwin applied the wrong burden of proof in dismissing the order of protection.

(5) Whether Judge Gwin erred in dismissing the order of protection.

(6) Whether Judge Gwin erred in excluding the testimony of Ms. Jackson's private investigator witness.

(7) Whether Judge Gwin erred in assessing court costs to Ms. Jackson.

1.

Ms. Jackson first argues that the trial court erred in considering Mr. Lanphere's motion to dismiss or transfer jurisdiction and venue on the ground that he did not provide her with the five-day notice required under Tenn. R. Civ. P. 6.04(1). The certificate of service on the motion indicates that the motion was sent to Ms. Jackson's attorney in the pending juvenile court proceedings on June 15, 2010, and given to Ms. Jackson herself on June 16, 2010, the day of the hearing. We find no merit in Ms. Jackson's argument because the statement of the evidence does not state that she objected to the court's consideration of the motion. In fact, the chancellor removed such a statement from Ms. Jackson's proposed statement of the evidence. Moreover, since the chancellor denied Mr. Lanphere's motion, Ms. Jackson was not prejudiced by the court's consideration.

2.

The next issue is whether the chancellor erred in ordering that Judge Gwin would hear the order of protection by interchange. There appear to be two main aspects to Ms. Jackson's argument. First, she asserts that Chancellor Gray should have had a hearing on her order of protection on June 16, 2010, instead of continuing the matter for Judge Gwin to hear it on June 24, 2010. Second, she argues that Judge Gwin could not properly hear the case for jurisdictional reasons.

As to the first argument, Ms. Jackson takes the position that, pursuant to Tenn. Code Ann. § 36-3-605(b), the chancellor was required to hold a hearing within 15 days of the service of the ex parte order of protection. Tenn. Code Ann. § 36-3-605(b) states, in pertinent part:

> Within fifteen (15) days of service of such order on the respondent under this part, a hearing shall be held, at which time the court shall either dissolve any ex parte order that has been issued, or shall, if the petitioner has proved the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence, extend the order of protection for a definite period of time, not to exceed one (1) year, unless a further hearing on the continuation of such order is requested by the respondent or the petitioner; in which case, on proper showing of cause, such order may be continued for a further definite period of one (1) year, after which time a further hearing must be held for any subsequent one-year period. Any ex parte order of protection shall be in effect until the time of the hearing, and, if the hearing is held within fifteen (15) days of service of such order, the ex parte order shall continue in effect until the entry of any subsequent order of protection issued pursuant to § 36-3-609.

In 1997, the Supreme Court construed a predecessor version of Tenn. Code Ann. § 36-3-605(b) that required a 10-day time limit for holding a hearing but also included the same language used in the current version that, "Any ex parte order of protection shall be in effect until the time of the hearing." *Kite v. Kite*, 22 S.W.3d 803, 804-05 (Tenn. 1997). After examining the statute's legislative history, the Court concluded that "[t]he ten day hearing requirement is, therefore, merely a limitation on the duration of an *ex parte* protective order." *Id.* at 806. The Court held that this provision was not a limitation on the court's jurisdiction to conduct a hearing after the ten-day time period had passed. *Id.*

In the present case, we likewise conclude that the chancery court retained jurisdiction to hear Ms. Jackson's order of protection petition after the 15-day period had passed and was not required to hold the hearing on June 16, 2010.[4]

As to Ms. Jackson's second argument, we have previously explained that Chancellor Gray did not transfer the order of protection to another court but merely ordered that Judge Gwin would hear the case by interchange. Pursuant to Tenn. Code Ann. § 17-2-206, a trial judge sitting by interchange "shall have the same power and jurisdiction as the judge or chancellor in whose place the judge or chancellor is acting."

---

[4]The issue of the ex parte order's validity at the time of the June 24, 2010 hearing has not been raised by Ms. Jackson.

-6-

The remaining question is whether Judge Gwin, a Wilson County general sessions judge, could properly sit by interchange for Chancellor Gray, chancellor in Sumner County. This court is not aware of any statute authorizing this arrangement for interchange. Tenn. Code Ann. § 17-2-202 provides that state trial court judges have a duty to interchange with one another under certain circumstances. A general sessions judge is not, however, a state trial court judge. *See State ex rel. Winstead v. Moody*, 596 S.W.2d 811, 813-14 (Tenn. 1980). Tenn. Code Ann. § 17-2-208 provides that general sessions and juvenile court judges may interchange "with each other." Moreover, Tenn. Code Ann. § 17-2-209 provides that, under certain circumstances and in certain counties, the general sessions judge may sit by interchange for the circuit judge or chancellor exclusively in uncontested divorce cases or divorce cases based on irreconcilable differences. We know of no general statute allowing a general sessions judge to sit by interchange for a circuit judge or chancellor in other cases.[5] Moreover, this case involves a general sessions judge from one county sitting for a chancellor in a different county.

Based upon the applicable general laws, we must conclude that Judge Gwin was without actual authority to act as chancellor by interchange. However, we do not consider this to constitute reversible error in this case. In *Ferrell v. Cigna Property & Casualty Insurance Co.*, 33 S.W.3d 731, 739 (Tenn. 2000), the Supreme Court determined that the proper procedure had not been followed when a clerk and master was appointed circuit judge pro tem. The Court nevertheless declined to reverse the decision at issue based upon this procedural error and found that the clerk and master acted as judge de facto. *Id.* The Court cited the following description of a de facto officer:

> The judicial acts of one in possession of a judicial office created and in existence by law, under color of right, assuming and exercising the functions of such office with a good faith belief in his right to exercise such authority, involved and acquiesced in by the parties, the bar, court officials and the public, are those of a *de facto* officer.

*Id.* (quoting *State ex rel. Newsom v. Biggers*, 911 S.W.2d 715, 718 (Tenn. 1995)). In the present case, Judge Gwin acted as judge de facto.[6] There was no objection to his

---

[5]We are aware that there have been private acts in some counties authorizing the general sessions judge(s) to interchange with the chancellor(s) and/or circuit court judge(s). *See Crawford v. Gilpatrick*, 646 S.W.2d 433, 435 (Tenn. 1983); *see also* Op. Tenn. Atty. Gen. 02-074 (June 12, 2002). No such private act is at issue in this case.

[6]Future cases presenting the same issue will be considered in light of this clarification concerning the interchange of general sessions judges with circuit judges or chancellors. *See Maxwell Med., Inc. v.*

(continued...)

appointment by interchange at the initial court date on June 16, 2010, or at the hearing on June 24, 2010. (On the second date, Ms. Jackson was represented by counsel.) We therefore conclude that the issue of Judge Gwin's appointment was waived.[7] *See Dupuis v. Hand*, 814 S.W.2d 340, 342 (Tenn. 1991); *State Dept. of Children's Servs. v. A.M.H.*, 198 S.W.3d 757, 764 (Tenn. Ct. App. 2006).

3.

Ms. Jackson argues that the trial court erred in failing to make specific findings of fact and conclusions of law in its decision dismissing her petition for an order of protection.

In making this argument, Ms. Jackson relies on the final sentence of Tenn. R. Civ. P. 41.02(2), which provides that, when a trial court sitting without a jury grants involuntary dismissal, "the court shall find the facts specially and shall state separately its conclusions of law . . . ." As the Advisory Commission Comments state, the 2010 amendments to Tenn. R. Civ. P. 41.02 made the final sentence mandatory by deleting the requirement that a party request written findings of fact and conclusions of law. This change brought the rule into conformity with Tenn. R. Civ. P. 52.01, which was amended in 2009 to delete the requirement of a request for findings of fact and conclusions of law in all actions tried without a jury. Tenn. R. Civ. P. 41.02 cmt. 3; Tenn. R. Civ. P. 52.01 cmt. 3.

Mr. Lanphere responds to Ms. Jackson's argument by pointing to the following statements made by the trial court at the hearing:

> [T]he Court has to consider a "history of violence, a pattern of conduct, the petitioner's fear of retaliation, the respondent's access to weapons, the respondent's history of stalking, the respondent's criminal record, the respondent's use of drugs and alcohol, the respondent's threats of suicide, the respondent's history of mental illness, threats to attack the petitioner or the child or other family members, threats to animals, threats or attacks on one or more members of the family or the household."

> And the Court finds that in this case the proof fails, no order of protection is warranted, the Petition will be dismissed.

---

[6](...continued)
*Chumley*, 282 S.W.3d 893, 898 (Tenn. Ct. App. 2008) (declining to find de facto judge where proper procedures for appointment of special judge were not followed despite clear mandates of *Ferrell*).

[7]We note, also, that Tenn. Code Ann. § 36-3-601 gives general sessions courts as well as circuit and chancery courts jurisdiction over orders of protection. Thus, this was not a proceeding with which Judge Gwin lacked familiarity.

These statements do not, however, constitute findings of fact or conclusions of law. Rather, the court stated its understanding of applicable legal principles but failed to outline how the court found those principles to apply to the facts of this case.

In light of the trial court's failure to follow the mandatory requirements of Tenn. R. Civ. P. 41.02 and 52.01, we must vacate the trial court's determination regarding the order of protection and remand the matter for entry of findings of fact and conclusions of law. Furthermore, we decline to address issues 4 and 5, regarding the burden of proof and the propriety of the court's determination, since any review of those issues must be predicated on the applicable findings of fact and conclusions of law.[8] Moreover, given our conclusions regarding the propriety of Judge Gwin's interchange in chancery court, we direct that any further proceedings be conducted by another, appropriately selected, judge.

4.

Ms. Jackson asserts that the trial court erred in excluding the testimony of Mitchell Davis, a private investigator.

As stated above, a trial court's decisions regarding the exclusion of evidence are reviewed under the abuse of discretion standard. *Brown*, 181 S.W.3d at 273. When Mr. Davis initially took the stand, he stated that he had been hired by Ms. Jackson in 2004 to do a background check on Mr. Lanphere. Mr. Lanphere objected to the relevance of this testimony based on the remoteness in time. Ms. Jackson argued that the testimony was relevant to her state of mind based upon what Mr. Davis told her. The trial court agreed with Mr. Lanphere and excused the witness.

We find no abuse of discretion in the trial court's decision to exclude Mr. Davis's testimony. Moreover, pursuant to Tenn. R. Evid. 103(a)(2), a reviewing court may not predicate error upon the trial court's exclusion of evidence unless "the substance of the evidence" is provided to the court. The party appealing the exclusion of error must provide the appellate court with an offer of proof; otherwise, an appealing court generally will not consider the issue. *See Dossett v. City of Kingsport*, 258 S.W.3d 139, 145 (Tenn. Ct. App. 2007). No offer of proof was provided in this case.

5.

---

[8]In the interest of judicial economy, we have chosen to address the remaining issues to avoid the necessity of another appeal as to issues not directly bearing on the correctness of the trial court's decision on the order of protection itself.

The final issue raised by Ms. Jackson concerns the assessment of court costs to her by the trial court.

In its July 6, 2010 order dismissing her petition, the trial court ordered that court costs be taxed to Ms. Jackson. Ms. Jackson argues that this assessment contravenes Tenn. Code Ann. § 36-3-617(a), which provides as follows:

Notwithstanding any other law to the contrary, no victim shall be required to bear the costs, including any court costs, filing fees, litigation taxes or any other costs associated with the filing, issuance, registration, service, dismissal or nonsuit, appeal or enforcement of an ex parte order of protection, order of protection, or a petition for either such order, whether issued inside or outside the state. If the court, after the hearing, issues or extends an order of protection, all court costs, filing fees, litigation taxes and attorney fees shall be assessed against the respondent.

Prior to a 2009 amendment, Tenn. Code Ann. § 36-3-617(a) used the words "no petitioner" instead of "no victim" in the first sentence. The 2009 amendments also added the words "dismissal or nonsuit." 2009 TENN. PUB. ACTS ch. 263.

In *Pearson v. Pearson*, No. E2009-00856-COA-R3-CV, 2010 WL 2432053, at *1 (Tenn. Ct. App. June 17, 2010) (no Tenn. R. App. P. 11 application filed), this court was asked to decide whether, prior to the 2009 amendment, Tenn. Code Ann. § 36-3-617(a) permitted a trial court to assess court costs against the petitioner after the petition was dismissed. Citing the "unequivocal language" of Tenn. Code Ann. § 36-3-617(a), the court reasoned that the statute did not give a trial court discretion to assess court costs against a petitioner seeking an order of protection. *Id.* at *2.

In *Lewis v. Rader*, No. E2010-00724-COA-R3-CV, 2010 WL 3853285 (Tenn. Ct. App. Sept. 30, 2010) (no Tenn. R. App. P. 11 application filed), a case decided under the current statute, the eastern section of this court reached the same result as it did in *Pearson*. The court in *Lewis* concluded that the change of wording in the new statute was "of no consequence." *Id.* at *3. We must respectfully disagree with the court's decision in *Lewis*. When construing a statute, courts "assume that the legislature chose the words of the statute purposely, and that the words chosen 'convey some intent and have a meaning and a purpose' when considered within the context of the entire statute." *Maino v. The Southern Co., Inc.*, 253 S.W.3d 646, 649 (Tenn. Ct. App. 2007) (quoting *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn. 2004)). Substituting the word "victim" for "petitioner" indicates that the person seeking the order of protection must be found by the court to have been subjected to domestic abuse in order to trigger the prohibition against the assessment of costs.

-10-

The legislative history of 2009 TENN. PUB. ACTS ch. 263 supports this construction. The legislative debates indicate that the purpose of changing "petitioner" to "victim" was to give trial judges the discretion to assess court costs against a petitioner if the court determines that he or she is not actually a victim of domestic abuse. H. JUDICIARY COMM., CRIM. PRAC. & PROC. SUBCOMM., H.B. 268, 106th General Assem. (Tenn. 2009) (statement of Rep. Watson, bill sponsor); S. SESS., S.B. 192, 106th General Assem. (Tenn. 2009) (statement of Senator Bunch). This revision allows judges to assess court costs against petitioners whom they determine are abusing the order of protection process. H. JUDICIARY COMM., CRIM. PRAC. & PROC. SUBCOMM. (statement of Rep. Watson).

We therefore conclude that the trial court did not err in assessing court costs against Ms. Jackson regarding her petition for an order of protection.

CONCLUSION

For the foregoing reasons, we vacate and remand the trial court's order of dismissal to allow for the entry of findings of fact and conclusions of law. We reject Mr. Lanphere's argument that this is a frivolous appeal and that he should be awarded his attorney fees and costs on appeal. Costs of the appeal are taxed equally between the two parties.

_____
ANDY D. BENNETT, JUDGE