IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 2, 2024

## NEDRA R. HASTINGS v. LARRY M. HASTINGS, JR.

**Appeal from the Juvenile Court of Shelby County**
**No. R-2487          Nancy Percer Kessler, Judge**

_____

### No. W2020-01225-COA-R3-JV

_____

This protracted and contentious child support action began on April 15, 2005, with the filing of a petition for child support filed by the State of Tennessee ("the State") on behalf of the mother, Nedra R. Hastings ("Mother") in the Juvenile Court of Memphis and Shelby County, Tennessee seeking support from the father, Larry M. Hastings ("Father"), for Mother and Father's only child, born in 2004. The petition sought child support enforcement assistance pursuant to Title IV-D of the Social Security Act, codified at 42 U.S.C. § 651, _et seq._ ("Title IV-D"). In July 2005, the trial court entered an order establishing child support, which ordered that Father pay support, that Father provide medical insurance for the child, and that each parent pay half of any medical expenses not covered by insurance. Over the years that followed, the State, acting on behalf of Mother, or Mother acting pro se and independent of the State, filed numerous motions and/or petitions, including petitions to modify the child support amount, petitions for contempt for Father's failure to pay medical and other expenses, objections to the appointment of special judges and magistrates by the juvenile court judge, objections to the court hearing motions virtually via Zoom, and requests for the court to rehear motions and petitions. On September 24, 2020, an appointed special judge, who heard only Title IV-D matters, disposed of all matters remaining in the Title IV-D case and continued the pending contempt and child-support modification matters to be heard by a judge who handled non-Title IV-D matters. This appeal, which is the second of Mother's four appeals that arise from this case, followed. The numerous issues Mother raises in this appeal principally relate to the appointment of a special judge, recusal issues, and issues that led up to the final order entered on September 24, 2020. Following a thorough review of the record and the issues raised in this appeal for which Mother presents arguments as required by Tennessee Rule of Appellate Procedure 27(a)(7), we affirm the decisions of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Nedra R. Hastings, Memphis, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter, and Jordan K. Crews, Senior Assistant Attorney General, for the appellee, the State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

As noted above, this is but one of four appeals that arise from the same child support action.[1] The first appeal was a Supreme Court Rule 10B Accelerated Recusal appeal from an order denying Mother's motion for recusal of an appointed special judge. *See* Tenn. Sup. Ct. R. 10B, § 2.07. This is the second appeal, which arises from the final order entered in the Title IV-D case on September 24, 2020. The third and fourth appeals arise from orders entered in the non-Title IV-D proceedings.

The relevant facts and procedural history of this case include many of those set forth in this court's opinion in the third appeal, *Hastings v. Hastings*, No. W2020-01665-COA-R3-JV, 2023 WL 7403577 (Tenn. Ct. App. Nov. 9, 2023) (hereinafter *Hastings III*). They read, in pertinent part:

> This matter began nearly twenty years ago with a petition for child support filed by the State of Tennessee on behalf of the appellant mother, Nedra R. Hastings ("Mother"), on April 15, 2005, in the Juvenile Court of Memphis and Shelby County ("trial court") seeking support from the appellee father, Larry Maurice Hastings ("Father"), for their son, N.H. (the "Child"), who was born in 2004. Mother sought child support enforcement assistance pursuant to Title IV-D of the Social Security Act, codified at 42 U.S.C. § 651, *et seq.* ("Title IV-D"). On July 29, 2005, the trial court entered an order directing Father to pay child support in the amount of $465.00 per month beginning on August 1, 2005, with a retroactive child support amount totaling $438.00. The trial court further ordered Father to provide medical insurance for the child with each party responsible for 50% of medical expenses not covered by insurance. In the months that followed, the parties

---

[1] The other appeals filed by Mother, listed in chronological order of their filing, are: *Hastings v. Hastings*, No. W2020-00989-COA-T10B-CV, 2020 WL 4556831 (Tenn. Ct. App. Aug. 6, 2020), *Hastings v. Hastings*, No. W2020-01665-COA-R3-JV, 2023 WL 7403577 (Tenn. Ct. App. Nov. 9, 2023), and *Hastings v. Hastings*, No. W2022-00433-COA-R3-JV, 2023 WL 7403575 (Tenn. Ct. App. Nov. 9, 2023). The third and fourth appeals, No. W2020-01665-COA-R3-JV and No. W2022-00433-COA-R3-JV, were assigned to a different panel on August 1, 2023, while this appeal was not assigned to this panel until January 2, 2024. The record does not explain the reason for the delay in assigning this appeal to this panel.

filed several petitions to modify child support, to modify the visitation schedule for the Child, and for contempt for failure to comply with the court's orders. On June 14, 2006, the trial court found that the court's previous child support order, entered on July 29, 2005, should be modified and the monthly child support award increased from $465.00 to $681.00, to begin on December 1, 2005. The trial court also found that Father owed medical expenses in arrears totaling $1,694.82. The trial court established a monthly payment schedule for these arrearages.

On October 22, 2009, the trial court entered an order *nunc pro tunc*, determining that Father owed uninsured medical expenses for the child in the amount of $682.36 based upon Mother's Petition to Enforce Child Support and Citation for Contempt of Court filed on June 22, 2009, and her Petition for Medical Contempt filed on June 29, 2009. On June 18, 2015, upon Mother's *pro se* motion to modify child support, the trial court modified the June 14, 2006 child support order by decreasing the monthly support amount from $681.00 to $552.00 beginning July 1, 2015. Mother filed a motion for rehearing, and on October 20, 2015, the trial court set aside the June 18, 2015 order and again modified the June 14, 2006, order—this time by decreasing Father's monthly child support payments from $681.00 to $460.00 from July 1 to September 1, 2015. Father was ordered to pay $505.00 per month beginning September 1, 2015.

Spanning the next five years, the parties filed numerous motions and petitions, the bulk of which were filed by Mother seeking medical payments for the Child from Father, changes in the visitation schedule for the Child, and modification of the child support award. The trial court addressed these motions in numerous orders, many of which we delineate here by date with a brief description of their substantive impact on the case:[2]

| Order Date | Hearing Date | Action of the Court |
|---|---|---|
| January 28, 2016 | January 5, 2016 | Modified visitation order previously entered on February 2, 2006. |
| April 28, 2016 | March 10, 2016 | Dismissed Father's petition to modify custody; substituted counsel for Father; directed parties to mediation. |

[2] The trial court also entered several orders of continuance for various reasons, which [the court did] not include[] in this list.

| | | |
|---|---|---|
| June 22, 2016 | June 7, 2016 | Found Father in contempt of the court's October 22, 2009 order to pay medical expenses; instructed Father to purge his contempt by paying $682.36 by June 10, 2016; instructed Father to pay $800.00 in orthodontic expenses for the child; instructed Father to pay monthly toward $2323.99 medical expense arrearage. |
| July 20, 2016 | June 9, 2016 | Dismissed Mother's petition for contempt filed December 28, 2015; granted Mother's "Petition for Modification of Visitation and Temporary Injunction" filed on the same day, December 28, 2015. |
| Sep. 12, 2016 | Sep. 7, 2016 | Dismissed Mother's June 16, 2016 petition for contempt because Father had made satisfactory payment arrangements. |
| April 3, 2017 | March 20, 2017 | Denied Mother's petition to rehear; reconfirmed the visitation order entered January 28, 2016. |
| August 22, 2017 | July 18, 2017 | Sustained Mother's June 27, 2017 petition for contempt; taxed Father with medical expense arrearage of $1,730.00 to be paid monthly beginning August 1, 2017. |
| Nov. 16, 2017 | June 23, 2017 | Ordered Father to pay $100.00 to Mother immediately and $75.00 per month until his debt for the Child's medical expenses was repaid; changed Mother's name on the case style to "Nedra Rochelle Ransom Hastings." |
| May 9, 2018 | March 22, 2018 | Denied Mother's *pro se* motions to amend judgment (and supplements to motion to amend) filed in August, October, and December 2017; declared Father in compliance with all ordered payments as of March 22, 2018. |

| | | |
|---|---|---|
| August 28, 2018 | July 20, 2018 | Reaffirmed trial court's March 22, 2018 order declaring Father up to date on all payments. |
| Sep. 25, 2019 | August 28, 2019 | Dismissed Mother's November 30, 2018 petition to modify child support. |
| June 26, 2020 | February 14, 2020 | Dismissed Mother's "Second Amended Petition for Contempt for Failure to Pay Medical/Dental Expenses; and Contempt for Child Support of Court" filed December 26, 2019. |
| July 16, 2020 | January 3, 2020 | Dismissed Mother's October 18, 2019 objection to findings and recommendations of magistrate and motion for relief from order; denied Mother's request for recusal of Title IV-D Magistrate Nancy Percer Kessler; denied Mother's December 31, 2019 Rule 60 motion to vacate *nunc pro tunc* the trial court's July 23, 2015 order; set aside the trial court's August 28, 2019 order dismissing Mother's petition to modify child support. |

*Hastings III*, 2023 WL 7403577 at *1.

Then, on July 21, 2020, in response to Special Judge Kessler's (hereinafter "Judge Kessler") denial of Mother's motion for recusal/disqualification, Mother filed a petition in this court for interlocutory appeal pursuant to Tennessee Supreme Court Rule 10B, Section 2.01. That appeal was dismissed on August 6, 2020, on the finding that Mother's petition was profoundly deficient. Mother then filed an application for permission to appeal in the Supreme Court pursuant to Tennessee Supreme Court Rule 10B, Section 2.07, which the Court denied on September 1, 2020. Thus, the case returned to the Juvenile Court.

On August 28, 2020, Judge Kessler heard the remaining issues in the Title IV-D case and the additional issues that arose by subsequent filings. The resulting order, filed on September 24, 2020, states as follows:

This cause came to be heard on August 28, 2020, before the Honorable Nancy Percer Kessler, Special Judge of the Juvenile Court of Memphis and Shelby County, Tennessee, upon a Notice of Request for Hearing Before the Judge to rehear the following pleadings filed by the petitioner, Nedra Rochelle-Ransom Hastings (hereinafter, "Ms. Hastings"): (1) Petition for

Contempt for Failure to Pay Medical/Dental Expenses (filed September 6, 2018); (2) Petition to Modify Child Support (filed November 30, 2018); (3) Notice of Request for Hearing Before the Judge (filed August 28, 2019, from the hearing of August 28, 2019, on Ms. Hastings' pro se petition to modify child support); (4) Amended Petition for Contempt for Failure to Pay Medical/Dental Expenses (filed September 20, 2019); (5) Objection to Findings and Recommendations of Magistrate; and Motion for Relief From Order (of August 28, 2019, filed October 28, 2019); (6) Amended Objection to Findings & Recommendations of Magistrate; Relief From Judgment; and Motion for Contempt of Child Support (filed November 6, 2019); (7) Objection to Hearing Before Appointed Special Judges (filed November 27, 2019); (8) (2nd) Amended Petition for Contempt for Failure to Pay Medical/Dental Expenses; Contempt for Child Support (filed December 26, 2019); (9) Rule 60 Motion to Vacate *Nunc Pro Tunc* Order (filed December 31, 2019); (10) Supplement-Rule 60 Motion to Vacate *Nunc Pro Tunc* Order (filed January 31, 2020); (11) Amended Motion for Disqualification of Magistrate/Special Judge (filed February 5, 2020); (12) Objection to Proposed Order of Title IV-D Attorney Johnson- Spears Submitted February 6, 2020; and, Counter-Proposed Order (filed February 20, 2020); (13) Supplement to Modify Child Support for Extraordinary Expenses & Deviations; and Consolidation of Petitions for Contempt of Child Support and Medical Expenses (filed March 2, 2020); (14) Motion for Entry of Orders: January 3 and February 3, 2020 [should have been February 14, 2020]; Motion to Amend Orders for Sufficient Findings; June 26, 2020 (filed July 15, 2020); (15) Supplement to Modify Child Support for Extraordinary Expenses & Deviations; and Consolidation of Petitions for Contempt of Child Support & Medical Expenses (filed August 7, 2020); (16) Supplement Motion for Entry of Orders: January 3 & February 3 [14], 2020; Motion to Amend Orders for Sufficient Findings: June 26, 2020 & July 16, 2020 (filed August 7, 2020); (17) Motion for Rule 16 Pre-Trial Conference; Objection to Improper Notice of Virtual Hearing Scheduled 8-28-2020 (filed August 25, 2020). Additionally before the Court was Maximus's Motion to Quash Subpoenas (filed August 24, 2020).

*Hastings III*, 2023 WL 7403577 at *2 n.2.

The following is a summary of Judge Kessler's reasoning and rulings set forth in her order entered September 24, 2020, which order ended the Title IV-D case.

Judge Kessler denied Mother's objection to the virtual hearing, concluding that "[t]he virtual hearing was proper and the notice was sufficient." She found that the notice of the virtual hearing, which included Zoom instructions for hearing participants, was mailed to Mother on August 19, 2020, which the court found to be "well within the five

- 6 -

(5) days required by Rule 6.04 of the [Tennessee] Rules of Civil Procedure." She also found that the website of the juvenile court "g[ave] specific Zoom instructions for attorneys and the public, including instructions for submitting documents into evidence." Judge Kessler also noted that the hearing was held virtually due to the COVID-19 pandemic and pursuant to the Supreme Court's instructions that "limited[ed] in-person contact in the courts" and "recommend[ed] virtual hearings rather than in-person." She also noted that the Juvenile Court Judge, Judge Dan H. Michael ("Judge Michael") had ordered that "all dockets . . . be conducted via Zoom hearings."

With regard to Maximus, Inc.'s ("Maximus")[3] motion to quash the subpoenas issued by Mother, Judge Kessler found that this issue was between Mother, the Tennessee Department of Human Services ("DHS"), and Maximus, and that it "f[e]ll outside the jurisdiction of the Juvenile Court and should be addressed separately, either by an administrative appeal or in another court."[4]

Judge Kessler also denied Mother's supplemental Rule 60 motion to vacate the July 23, 2015 order, entered nunc pro tunc for October 22, 2009, explaining that, because Father's attorney did not prepare the order as directed after the October 22 hearing, she "prepared the nunc pro tunc order from her notes of the hearing." Judge Kessler also found that Mother provided no admissible evidence to rebut the accuracy of the nunc pro tunc order, and that Mother's motion was untimely because it was filed over four years after the nunc pro tunc order had been entered, which was "well after the one year limitation" established in Tennessee Rule of Civil Procedure 60.02.

Judge Kessler further denied Mother's motion to amend the June 26 and July 16, 2020 orders.[5] Additionally, Judge Kessler addressed the issues raised in Mother's motion for Rule 16 pre-trial conference and objection to improper notice of the virtual hearing scheduled for August 28, 2020, finding that it could not give Mother the "special treatment" that she was requesting, and that, although Mother sought the recusal of Judge Kessler, she could not show "one instance where she has been treated unfairly, discriminated against, or treated with bias" by Judge Kessler.

---

[3] Maximus is a private contractor that provides Title IV-D services for the Tennessee Department of Human Services.

[4] The order noted that Mother issued the subpoenas because "[Mother] wanted to see the methodology used to prepare the arrears calculations as she believed the State was mistaken in their calculation in the amount of [Father's] arrears."

[5] Judge Kessler explained at the August 28, 2020 hearing that, contrary to Mother's contentions, the June 26 and July 16 orders were accurate because they reflected her notes from the hearings and her review of the audio recordings of the hearings.

In the interim, on June 18, 2020, Mother submitted a form seeking withdrawal from the State's Title IV-D Child Support Services program. Shortly thereafter, Mother paid on behalf of Father the balance of the child support arrears that he owed to the State. Then, the parties received notice that, effective July 1, 2020, Mother's child support case was no longer a Title IV-D case. Because Judge Kessler was appointed to only hear Title IV-D matters, Judge Kessler stated in her final order that the unresolved contempt and child support modification matters were continued "to be heard by another Magistrate/Special Judge who hears non-Title IV-D matters."

This appeal by Mother followed the entry of the September 24, 2020 order. Mother filed a brief. Father has not filed a brief nor made an appearance in this court. As stated in its brief, the State of Tennessee entered an appearance in this court and filed an appellee's brief to respond to Mother's issues to the extent they pertain to the Title IV-D case.[6]

**ISSUES**

Mother raises numerous issues on appeal; however, the issues set forth in her statement of the issues are not entirely consistent with the issues stated in the argument section of her brief. "It is well settled that an appellant's failure to designate an issue in its appellant brief as required by Tenn. R. App. P. 27 may result in waiver of that issue." *Thomson v. Genesis Diamonds, LLC*, 661 S.W.3d 121, 129 (Tenn. Ct. App. 2022) (citation omitted); *see also Hyatt v. Adenus Grp., LLC*, 656 S.W.3d 349, 377 (Tenn. Ct. App. 2022) (citation omitted) ("[A]n issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4).").

Moreover, several of the issues designated in Mother's statement of the issues are not properly supported by an argument as required by Tennessee Rule of Appellate Procedure 27(a)(7) and Rule 6(a) of the Tennessee Court of Appeals Rules. "An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Little v. City of Chattanooga*, 650 S.W.3d 326, 340 (Tenn. Ct. App. 2022). Under Tennessee Rule of Appellate Procedure 27(a)(7), an argument must include "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record[.]" Tenn. R. App. P. 27(a)(7). Moreover, "an issue is waived where it is simply raised without any argument regarding its merits." *Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2000) (citations omitted).

---

[6] As explained in the State's brief: "This appeal, as discussed, arises from the September 24, 2020 order issued by Special Judge Kessler. Because that order addresses various matters relating to the Title IV-D portion of this case, the State files this brief to defend the order."

Thus, we shall only address the issues that Mother has designated in her statement of the issues and for which Mother has set forth the requisite legal arguments.[7]

The issues listed below are those generally stated in Mother's statement of the issues that are supported by an argument, which we have restated as follows:

I.      Whether Judge Kessler erred in continuing to make decisions in this case while a written order on Mother's recusal motion was pending; Whether the juvenile court had jurisdiction to hear or decide motions while Mother's Rule 10B accelerated appeals were pending before the Court of Appeals and the Supreme Court?

II.     Whether the State extended their authority beyond the jurisdiction conferred on them by the Tennessee General Assembly by participating in the present case while Mother was not receiving public benefits?

III.    Whether the juvenile court judge's absences were necessary to warrant the appointment of a special judge; Whether Judge Kessler was properly appointed pursuant to Tennessee Code Annotated §§ 17-2-118 & 17-2-122?

IV.    Whether Judge Kessler abused her discretion in holding the August 28, 2020 hearing via Zoom; Whether Mother received proper notice of the August 28, 2020 Zoom hearing?

V.     Whether it was an abuse of discretion for Judge Kessler to dismiss the Maximus witnesses subpoenaed by Mother?

VI.    Whether the trial court's orders entered June 26, 2020 and July 16, 2020 are independent judgments; Whether those orders comport with Tennessee Rules of Civil Procedure 52.01 and 54.02?

## STANDARD OF REVIEW

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise.

---

[7] Mother makes additional arguments pertaining to Judge Kessler's September 25, 2020 order, wherein Judge Kessler denied Mother's motion for video copies of the August 28, 2020 virtual hearing and her request for reimbursement of the $75 filing fee associated with that motion. Although Mother subsequently amended her notice of appeal to include an appeal from the September 25, 2020 order, that order was entered after and does not implicate Judge Kessler's September 24, 2020 order, which is the order on appeal. Thus, we do not address these issues.

*See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citation omitted). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006) (citations omitted).

Regarding *pro se* litigants, this Court has explained:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

> The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

> Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Young v. Barrow*, 130 S.W.3d 59, 62–63 (Tenn. Ct. App. 2003) (internal citations omitted).

## ANALYSIS

### I.   RECUSAL ISSUES

Mother contends that Judge Kessler erred in continuing to make decisions in this case pending a written order on her recusal motion. Mother also claims that Judge Kessler erred in continuing to hear and decide matters in this case while her Rule 10B accelerated appeals were pending before the Court of Appeals and the Supreme Court. We will discuss each issue in turn.

- 10 -

Mother filed her recusal motion on November 27, 2019, in which she sought the recusal of Judge Kessler. Judge Kessler heard the recusal motion on January 3, 2020, and issued an oral ruling denying the motion from the bench on that date. We have determined that Mother has failed to demonstrate that Judge Kessler heard or decided any matters in this case during the time period between those dates.

At the January 3, 2020 hearing, Judge Kessler issued an oral ruling denying Mother's recusal motion. Judge Kessler explained that she did not know Mother or Father, "ha[d] no prejudice against either one of [them]," and "ha[d] no problem being fair and impartial to each of [them]." The written order denying the recusal motion was entered on July 16, 2020. After Judge Kessler had orally denied the recusal motion, but before the written order was entered, Judge Kessler heard other matters and issued a written order on those matters on June 26, 2020.

Tennessee Supreme Court Rule 10B, Section 1.02, provides that, while a recusal motion is pending, "the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in the order in which such action is taken." Tenn. Sup. Ct. R. 10B, § 1.02. This provision "requires the trial court to first analyze the motion to disqualify before proceeding to any substantive issues in the case." *In re Destiny C.*, No. M2021-00533-COA-R3-PT, 2022 WL 2287022, at *10 (Tenn. Ct. App. June 24, 2022) (citation omitted).

Thus, "[w]hen a trial court ignores a pending motion to recuse and enters further orders in a case without making a finding of good cause as dictated by Rule 10B section 1.02, the orders entered during the pendency of the motion to recuse may be vacated on appeal." *State v. Coleman*, No. M2017-00264-CCA-R3-CD, 2018 WL 1684365, at *9 (Tenn. Crim. App. Apr. 6, 2018) (citations omitted). Nevertheless, this court "has declined to vacate an order entered during the pendency of a motion to recuse when the trial judge had orally denied the motion to recuse prior to entering the written order on the substantive issues." *Id.* (citation omitted).

Here, Judge Kessler denied Mother's recusal motion from the bench during the January 3, 2020 hearing. Thus, Judge Kessler denied the recusal motion before she heard and decided the matters addressed in her June 26, 2020 order. Although "[t]he better practice would have been to enter the order denying the motion for recusal before entering the order[s] on [the other matters]," *In re Conservatorship of Tate*, No. M2012-01918-COA-10B-CV, 2012 WL 4086159, at *3 (Tenn. Ct. App. Sept. 17, 2012), we find this error by Judge Kessler to be harmless. *See Coleman*, 2018 WL 1684365, at *9.

For the foregoing reasons, we find no reversable error with Judge Kessler hearing and ruling on matters after she had orally denied Mother's recusal motion but before she had entered the written order denying the recusal motion.

Mother also contends that Judge Kessler lacked jurisdiction to hear and decide matters in this cause while Mother's Rule 10B accelerated appeal was pending. Tennessee Supreme Court Rule 10B, Section 2.04 provides that "[t]he filing of a petition for recusal appeal does not automatically stay the trial court proceeding." Tenn. Sup. Ct. R. 10B, § 2.04. While "the trial court or the appellate court may grant a stay on motion of a party or on the court's own initiative, pending the appellate court's determination of the appeal," *Id.*, neither the trial court, this court, nor the Supreme Court issued a stay in this case. Thus, Judge Kessler was authorized to hear and rule upon matters in this case while Mother's Rule 10B interlocutory appeal was pending. *See Rich v. Rich*, No. M2018-00485-COA-T10B-CV, 2018 WL 1989619, at *12 (Tenn. Ct. App. Apr. 27, 2018). Therefore, Judge Kessler did not act improperly in hearing and entering orders on additional matters in this case while Mother's Rule 10B appeal was pending. *See Id*.

## II. THE STATE'S INVOLVEMENT IN THE TITLE IV-D CASE

Mother's second issue states: "Whether 'the State' TN DHS/Title IV-D Private Contractor extended their authority beyond the jurisdiction conferred on them by the TN General Assembly[.]"

Mother contends that this court should vacate certain orders that resulted from the State's alleged improper participation in hearings leading up to the July 16, 2020 order, which addressed the issues presented at the January 3, 2020 hearing. She contends that these orders should be vacated because the State improperly "extended [its] authority" by participating in the child support proceeding during the periods of time that Mother was not receiving public benefits.

It appears that Mother is of the mistaken belief that a child support case is a Title IV-D case only when the obligee parent, in this case Mother, is still receiving public benefits.

As noted earlier, this action was initiated in 2005 by the State, acting on Mother's behalf, because Mother had applied for child support enforcement assistance pursuant to Title IV-D. "[A] Title IV-D proceeding is commenced when a custodial parent applies to a Title IV-D service provider for assistance in establishing, modifying, or collecting child support." *Baker v. State ex rel. Baker*, No. 01A01-9509-CV-00428, 1997 WL 749452, at *4 (Tenn. Ct. App. Dec. 5, 1997). Thus, this Title IV-D case began when Mother applied for assistance. *See* Tenn. Code Ann. § 71-3-124(a)(1).

Admittedly, Mother was no longer receiving benefits at the time in question. However, a Title IV-D case retains its status until it is closed in compliance with federal law, and "[f]ederal law prohibits the closure of a Title IV-D case so long as there is a child support arrearage due and assigned to the State as a result of the family's receipt of public

assistance benefits." *State ex rel. Mitchell v. Lea*, No. W2003-01650-COA-R3-JV, 2004 WL 2607564, at *7 (Tenn. Ct. App. Nov. 16, 2004) (citing 45 C.F.R. § 303.11)).

Father's outstanding arrearage judgment, which was owed to the State, was not satisfied until the end of June 2020.[8] Thus, Mother's case retained its status as a Title IV-D case until that time. *See State ex rel. Mitchell v. Armstrong*, No. W2003-01687-COA-R3-JV, 2004 WL 2039811, at *4 (Tenn. Ct. App. Sept. 3, 2004) (citing 45 C.F.R. § 303.11) ("Since [the] [f]ather's arrearage had not yet been paid, [the] [m]other did not meet any of the criteria listed and thus could not end Title IV-D services.").

For the foregoing reasons, the State did not improperly participate in the aforementioned proceedings.

### III. APPOINTMENT OF SPECIAL JUDGES

Mother's next issue reads as follows: "Whether the Juvenile Court Judge's absences were necessary to warrant an appointment of a special judge; Whether the Special Judge was properly appointed[.]?"

The relevant statute is Tennessee Code Annotated § 17-2-122, which provides:

(a) Notwithstanding § 16-15-209 [Special judges; selection; compensation] or § 17-2-109 [Congestion or delay in litigation; appointment of former judges] or any other relevant provision to the contrary, a judge shall have the authority to appoint a special judge as provided in this section.

(b) Sections 16-15-209 and 17-2-109 and any other relevant provision shall not apply where a judge finds it necessary to be absent from holding court and appoints as a substitute judge an officer of the judicial system under the judge's supervision whose duty it is to perform judicial functions, such as a juvenile magistrate, a child support magistrate or clerk and master, who is a licensed attorney in good standing with the Tennessee supreme court. The judicial officer shall only serve as special judge in matters related to their duties as judicial officer.

Tenn. Code Ann. § 17-2-122 (A)–(B).

Before each appointment, Judge Michael signed a separate order appointing Judge Kessler, and each order stated:

---

[8] Ironically, Mother paid Father's arrearage judgment in order to bring the State's involvement in this case to a conclusion.

The Honorable Dan H. Michael, Judge of the Juvenile Court of Memphis and Shelby County, Tennessee finds it necessary to be absent from holding Court, and pursuant to T.C.A. 17-2-122(b) appoints as substitute Judge, Nancy Kessler, who is a licensed attorney in good standing with the Tennessee Supreme Court and a Magistrate appointed by him to serve as Special Judge in matters related to duties as a judicial officer.

Mother contends that "the record fails to show whether the Juvenile Court Judge's repeated absences were 'necessary.'" While the judge's absence must be necessary, rather than of "mere convenience," to warrant appointment of a special judge under § 17-2-122, *Ferrell v. Cigna Prop. & Cas. Ins. Co.*, 33 S.W.3d 731, 737 (Tenn. 2000), neither the *Ferrell* decision nor Tennessee Code Annotated § 17-2-122 requires a presiding judge to explain the reason for his or her absence. *See Hastings III*, 2023 WL 7403577 at *6. As further discussed in *Hastings III*, the appointing judge need not "provide proof that the judge's absence is 'necessary' in a formal document entered into the record." *Id*. Furthermore, there is no authority "that dictates any requirement that a judge must explain how and whether his or her absence is 'necessary' in the context of appointing a special judge." *Id*.

Mother has failed to show that Judge Michael's absences were anything other than necessary. Thus, as we explained in *Hastings III*, we should not "question or disturb Judge Michael's orders appointing Special Judge [Kessler] in which Judge Michael stated he found it necessary to be absent from court." *Id*.

## IV.    ZOOM VIRTUAL HEARINGS DURING COVID-19 PANDEMIC

Mother contends that Judge Kessler "abused her discretion in holding virtual hearing of complex, separate matters without proper notice, and instructions of presenting evidence, despite Mother's objection to a virtual hearing[.]" These contentions pertain to the hearing held by Judge Kessler on August 28, 2020 via Zoom.

At the time of the hearing, a standing order issued by the Tennessee Supreme Court was in effect, which suspended in-person hearings statewide due to the COVID-19 pandemic. *See In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. May 26, 2020) (Order) ("Courts should continue to conduct as much business as possible by means other than in-person court proceedings.").

Consistent with the Supreme Court's order, Judge Michael also issued an order, pursuant to which "all dockets" were to be heard "via Zoom." *See In re: COVID-19 Pandemic* (Shelby Cnty. Juv. Ct. May 27, 2020) (Order). That order was in effect at the time of the August 28, 2020 Zoom hearing.

- 14 -

We are mindful that this same issue was raised by Mother in her third appeal. *See Hastings III*, 2023 WL 7403577 at \*4. In that matter, she challenged the court's discretionary decision to hold a virtual hearing on November 24, 2020. *Id.* at \*11. In deciding that issue, we reasoned that "[t]he trial court, operating under a statewide suspension of in-person hearings due to a worldwide pandemic, was well within its discretion in noticing and conducting the November 24, 2020 hearing virtually by Zoom." *Id.* The same reasoning applies here.

With regard to Mother's contention that there were no "instructions [for] presenting evidence," as stated in Mother's motion objecting to the Zoom hearing, Judge Kessler noted that the juvenile court's website "g[ave] specific Zoom instructions for . . . submitting documents into evidence." The record fully supports this finding.

Mother also contends that she did not have sufficient notice of the August 28, 2020 Zoom hearing and that she did not know which matters would be heard at the hearing. We find no merit to either contention.

In an order entered on June 26, 2020, two months before the August 28 hearing, Judge Kessler identified the matters that would be heard on August 28. Then, on August 19, 2020, nine days before the August 28 hearing, the juvenile court clerk issued a notice that the August 28 hearing would take place via Zoom. That notice included the date and time of the hearing, the Zoom meeting ID, password, and link, and instructions to access the Zoom meeting.

Tennessee Rule of Civil Procedure 6.04(1) requires that notice of a hearing must be served "not later than five days before the time specified for the hearing." Tenn. R. Civ. P. 6.04(1). Thus, Mother received timely notice of the August 28 hearing and notice of what would be heard on that date. She also received adequate notice of how to participate in the hearing via Zoom.

For these reasons, we find that Judge Kessler acted within her discretion when conducting the August 28, 2020 hearing via Zoom, and that Mother had adequate notice of the hearing.

## V. QUASHING OF MOTHER'S SUBPOENAS

Mother contends that Judge Kessler abused her discretion by dismissing the witnesses that Mother had subpoenaed.

Mother issued subpoenas to two employees of Maximus to testify at the August 28, 2020 hearing regarding "the methodology used to prepare [Father's] arrears calculations." Mother stated that she believed that the State was mistaken in their calculation in the

- 15 -

amount of Father's arrears in child support. Shortly after learning of the subpoenas, Maximus filed a motion to quash the subpoenas.

After hearing arguments from Maximus and Mother, Judge Kessler quashed the subpoenas upon finding that the matter at issue, referring to the methodology the State used to prepare the arrears calculations, "f[e]ll outside the jurisdiction of the Juvenile Court and should be addressed separately, either by an administrative appeal or in another court."

On appeal, the Sate contends that the error, if any, by Judge Kessler in quashing the subpoenas was harmless. Specifically, the State contends that, had Mother been allowed to question the Maximus employees about the arrearage calculations, it would not have changed Judge Kessler's determination that she lacked jurisdiction to decide the issue.

As noted earlier, the order entered by Judge Kessler on June 26, 2020, two months prior to the August hearing, stated that Mother's pending contempt petitions, they being her Rule 60 motion to vacate the nunc pro tunc order and her petition to modify child support, would be heard on August 28, 2020. Neither the motion to vacate nor the petition to modify child support pertained to the amount of child support arrearage owed by Father nor the methodology used in calculating the arrearage. Thus, the evidence Mother sought to elicit from the Maximus employees would not have been germane to the issues before the court at that time.

As we have previously reasoned, "the erroneous exclusion of evidence will not require reversal of the judgment if the evidence would not have affected the outcome of the trial even if it had been admitted." *In re Melanie T.*, 352 S.W.3d 687, 698 (Tenn. Ct. App. 2011) (citations omitted); *see also* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). For these reasons, we find no reversable error with the decision to quash the subpoenas of the Maximus employees.

## VI.    INDEPENDENT JUDGMENT AND FINDINGS OF FACT

Mother's next issue reads: "Whether the trial court's orders are independent judgments; and Whether the orders comport to T.R.C.P. Rule 52.01 and/or 54.02?" She contends that "[t]he record shows each of the judgments or orders were adopted verbatim by the Title IV-D Attorneys' proposed orders, as presented/argued in this brief[.]" She also contends that the orders are not "based on factual findings, or appropriate conclusions of law, in contradiction to Tenn. R. Civ. P. 52.01, 54.02[.]"[9]

---

[9] We note that Tennessee Rule of Civil Procedure 54.02 has nothing to do with findings of fact or whether an order reflects the court's independent judgment. Thus, Rule 54.02 is not germane to the issues presented.

Mother's contentions are undermined by the fact that she does not identify which of Judge Kessler's orders she takes issue with. Nevertheless, we assume, as did the State, that the orders at issue are Judge Kessler's orders entered on June 26, 2020 and July 16, 2020, which orders have been the primary focus on Mother's appeal.

At the August 28, 2020 hearing on Mother's contentions that the June 26, 2020 and July 16, 2020 orders were deficient, inter alia, Judge Kessler explained how and by whom the orders were prepared. Specifically, Judge Kessler explained that "the principal court clerk initially prepares the order" but that she, meaning Judge Kessler, "made substantial changes" to the July 16 order, and the order "was very much changed and very specific." With reference to the June 26 order, Judge Kessler explained that she "reviewed it" and that she also "listened to the transcript" of the February 14 hearing. Then, Judge Kessler explained that the order that was entered was "based strictly on the testimony that [she] heard." Moreover, Judge Kessler stated that "those were my orders. Th[ey] were not [the Title IV-D attorney's] orders. . . . They are not Maximus' orders. They are my orders."

Mother has failed to present any competent evidence to contradict the above statements by Judge Kessler. Accordingly, we find that the June 26, 2020 and July 16, 2020 orders represent the independent judgment of Judge Kessler.

Regarding Mother's contention that the orders fail to comply with Tennessee Rule of Civil Procedure 52.01, we note that Rule 52.01 pertains to "all actions tried upon the facts without a jury[.]" Tenn. R. Civ. P. 52.01. The orders at issue do not pertain to a trial on the facts. Thus, Rule 52.01 is inapplicable.

For the reasons set forth above, we find no reversable error concerning this issue.

### IN CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in all respects. Costs on appeal are assessed to the appellant, Nedra R. Hastings.

_____
FRANK G. CLEMENT, JR., JUDGE